THE STATE OF MISSOURI, AT THE RELATION OF ROY RICE, RELATOR-RESPONDENT, v. EARL TOMPKINS, MARTIN PIERCE, WALTER LEGG, HENRY TUCKER, R. J. NELSON AND FOREST LASSWELL, MEMBERS OF THE BOARD OF DIRECTORS OF WILLIAMSTOWN CONSOLIDATED SCHOOL DISTRICT No. 7, LEWIS COUNTY, MISSOURI, RESPONDENTS-APPELLANTS. 203 S. W. (2d) 881.

St. Louis Court of Appeals. Opinion filed June 17, 1947.

Respondent's motion for rehearing or to transfer cause to the Supreme Court of Missouri overruled September 5, 1947.

1114

*Hilbert & Veatch* for appellants.

*J. Andy Zenge, Jr.,* for respondent.

1116

HUGHES, J.—This is an action in mandamus brought by Roy Rice against the Members of the Board of Directors of Williamstown Consolidated School District No. 7, Lewis County, Missouri. The actual facts involved are not in dispute, but the manner of establishing the facts is questioned. The relator sought to and did prove by parol evidence that at the regular annual school meeting in 1933 or 1934 the qualified voters of the school district voted upon a proposition that free transportation be furnished the pupils of the district to and from school, and that the proposition carried, and was thereafter put into effect by the School Board. There was no evidence and no claim that the manner or means of such transportation was submitted or voted on, but merely that free transportation be furnished. The fact was further proved that the records or minute books of the proceedings of the School Board produced by the school clerk were incomplete, in that there were no records or minute books for a period of time from May 11, 1931, to March 7, 1936, and the school clerk testified that the books he produced in court were the only books delivered to him by the preceding school clerk, and it was shown that the man who was school clerk in 1933 and 1934 was no longer a resident of the state. It was on the basis of this showing that the trial court permitted the parol evidence. While the evidence was lacking in probative force to clearly show the loss or destruction of the records from 1931 to 1936, or even that any such records had been kept, it was sufficient to vest in the trial court a discretion to permit the secondary or parol evidence.

The general rule is that if a record is lost its contents may be proved like any other document. Parry v. Walser, 57 Mo. 169, 172. If the facts and circumstances developed in a case are sufficient to reasonably satisfy the mind of the trial court that the original is lost and search has been made at the proper place, that is all that is necessary. "The object of the proof is merely to establish a reasonable presumption of the loss of the instrument, and this is a preliminary inquiry addressed to the discretion of the judge." Kleiman v. Geiselman, 114 Mo. 437, 443, 21 S. W. 796, 35 Am. St. Rep. 761. See also: State ex rel. School

Dist. of Affton v. Smith, 336 Mo. 703, 80 S. W. (2d) 858; State ex rel. Rigby v. Goodhue, 74 Mo. App. 162; City of Macon v. Fidelity & Deposit Co. of Maryland, 194 Mo. App. 677, 189 S.W. 645; Peter v. Kaufmann, 327 Mo. 915, 38 S. W. (2d) 1062; Bonsack & Pearce v. School Dist. of Marceline, 226 Mo. App. 1238, 49 S. W. (2d) 1085, 1088.

The theory on which relator tried the case below was that he was entitled to have free transportation to and from school for his eight year old daughter, on each day of the school year, regardless of weather or road conditions. In other words, his contention is that free transportation having been voted in the district, it was the mandatory duty of the Board of Directors to furnish his daughter free transportation to and from school on each school day, and this regardless of inclement weather or muddy roads. On the other hand, it was the contention of the respondents that they had a discretion in the matter, and that they had used their honest good judgment in providing for and fixing the routes for transportation, and having done so their actions cannot be controlled by mandamus.

In past years one of the bus routes fixed by the Board passed the home of relator, which is on a dirt road about four and one-quarter miles from the school house. However, for the school year 1945-1946 the bus came only to what is designated as Fretwell's Shed, which is about three-eighths of a mile east of relator's home, and in inclement weather and muddy roads it only came to the end of the rock road, which is about two miles east of Fretwell's Shed. On June 26, 1946, the minute book of the proceedings of the Board of Directors shows the following entry:

"Board met June 26, 1946. Motion by Tucker that bus drivers on east route go to the William More and Fretwell Shed when roads are passable for school bus; otherwise, they are to make only gravel portion of route. Shall be optional to drivers when dirt portion of road shall be traveled. Motion seconded by Nelson, which carried."

Before the school year of 1946-1947 began relator and his attorney met with the Board and discussed the matter of free transportation for relator's daughter, and were told that the Board would let the matter stand just like the minutes read. Relator testified that after the school year began sometimes the bus would come to the Fretwell Shed and sometimes it wouldn't, that "If the roads were a little too muddy to suit them they didn't come," that sometimes they would come only to the end of the rock road if the roads were real muddy; that on September 20th it was muddy and he took his little girl to the Fretwell Shed and waited until a quarter of nine, and the bus did not come; then on Monday, September 23rd, the bus driver called about 7:30 and said he couldn't come but for the little girl to go to the Hurley English place, which witness said would be half a mile east of the four corners there; he was asked, "You think a school bus with a load of school children could pull over that road any time, do you?" to which he answered,

1118

"Oh, no, not any time." He further said that if the bus failed to come he would object regardless of the weather.

This action was commenced on September 27, 1946. Following the hearing the trial court adopted relator's theory of the law and issued a peremptory writ of mandamus directing that respondents "furnish suitable transportation to relator's daughter from a point on Public Road in front of Relator's house to the Williamstown Consolidated School in Williamstown, Missouri, and return, on each day that said school shall be in session, and that said suitable transportation shall be furnished irrespective. of the weather, and that respondents pay the costs of this action."

Section 10326, Revised Statutes, 1939, Mo. R. S. A. Sec. 10326, so far as applicable, is as follows:

"Whenever the . . . board of education of a consolidated district shall deem it advisable . . . to provide for the free transportation to and from school, at the expense of the district, of pupils living more than one-half mile from the school house, for the whole or for part of the school year, said board of . . . education shall submit to the qualified voters of such school district . . . the question of providing such transportation for the pupils of such school district; Provided, . . . If two-thirds of the voters, who are taxpayers, voting at such election, shall vote in favor of such transportation of pupils of said school district, the board of directors or board of education shall arrange for and provide such transportation. The board of directors or board of education shall have authority and are empowered to make all needful rules and regulations for the free transportation of pupils herein provided for, and are authorized to and shall require from every person, employed for that purpose, a reasonable bond for the faithful discharge of his duties, as prescribed by the board. Said board of directors or board of education shall pay by warrant the expenses of such transportation out of the incidental fund of the district: . . ."

When transportation in a school district has been voted it is the duty of the Board of Directors or Board of Education to provide for such transportation, providing money is available in the incidental fund of the district to meet the expense thereof, and if the Board, without reasonable cause therefor, fails to provide transportation, it may be compelled to do so by mandamus. However, this does not mean that the court may by the hard and unyielding writ of mandamus substitute its discretion for that of the Board as to the means and manner and sufficiency and safety of the transportation to be furnished. Relator mainly relies upon the case of State ex rel. and to Use of Gastineau v. Smith, 196 S. W. 115. That case is clearly distinguishable from this. In that case the consolidated school district was formed by consolidating several common school districts, one of which was known as the Buford district, and the directors of the

consolidated district only provided transportation for such children as lived in the Buford district. The Springfield Court of Appeals held that this was a discrimination against the children of the other common school districts forming the consolidated district, and for that reason upheld a writ of mandamus issued by the circuit court commanding the Board of Directors to either furnish transportation for the children of the relators, or to furnish an elementary school for each of said children within two and one-half miles of their residence. On the facts before the court in that case, at least the result as announced in the opinion was correct. The facts are entirely different in this case, where there is no charge whatever of discrimination or abuse of discretion on the part of the Board against certain parts or sections of the consolidated school district.

The statute expressly vests with the Board the right and duty of making all needful rules and regulations for the free transportation of pupils and to prescribe the duties of the person employed for the purpose of such transportation, which in this case would be the bus driver.

There were four bus routes designated by the Board for transportation in this district. We take it that these routes and the method of transporting the pupils in this school district were approved by the state superintendent of schools as provided for by Section 10327, Revised Statutes 1939, Mo. R. S. A. Sec. 10327, or the district would not have been given state aid, as the evidence shows it was.

It would be most unreasonable to say that the statute requires that such transportation be from immediately in front of the home of each pupil, and this regardless of the weather or road conditions. Such a rigid construction would destroy the purpose of the law and make transportation so expensive that few rural districts could avail the pupils of the benefits intended. Not only so but the comfort as well as the safety of other pupils in the bus would be hazarded by compelling the bus to be driven over muddy roads. Similar statutes in other states have been construed by the courts to give the School Board a reasonable discretion as to the sufficiency of the transportation provided. In Iowa, under a statutory provision that when children live an unreasonable distance from school, the Board may, upon allowing reasonable compensation therefor, require parents to transport children a distance not exceeding two miles to connect with the regular bus route, such requirement is not unreasonable. Lanphier v. Tracy Consol. School Dist., 224 Iowa 1035, 277 N. W. 740. In North Dakota the statute required transportation "to and from school," as does our statute, and these words were construed to give the School Board a reasonable discretion in providing a conveyance, and it was held that there was no abuse of discretion in requiring boys to walk about one-third or one-quarter of a mile and across a frozen river in order to meet the school wagon on the bank of the river. State ex rel. Brand v. Mostad,

28 N. D. 224, 148 N. W. 831. In the case of Lyle v. State, 172 Ind., 502, 88 N. E. 850, one of the early cases upon the subject, under a statute requiring transportation of all pupils living at a greater distance than two miles, and for all pupils between the ages of six and twelve that live less than two and more than one mile from school, it was held that the transportation of children within a reasonable distance of their homes, so that no child was required to walk more than five-eighths of a mile, was a sufficient compliance with the statute. The court observed that it was not intended to relieve pupils from all inconvenience and exposure in going to or coming from school, especially in view of the fact that no transportation was authorized for children under twelve years of age who lived not more than one mile from school, and for children over twelve who lived not more than two miles from school. In the case of State ex rel. Stewart v. Miller, 193 Ind. 492, 141 N. E. 60, it was held that whether it was better that the relator's children walk three-quarters of a mile to reach the school bus, cross railroad tracks in doing so, and be exposed to the weather while waiting for the bus, rather than that the bus should call at their home, were matters properly within the discretion of the officers of the school district. See: 47 Am. Jur., p. 420; 56 C. J., Sec. 1055, p. 838.

Under our statutes the only office mandamus can perform, as to the transportation of children to and from school, is to require the school directors, where transportation has been voted, to exercise their discretion in providing such transportation in accordance with reasonable rules and regulations which they may adopt therefor. That is what the School Board did in this case. Where no fraud or corruption or abuse of discretion is alleged or shown on the part of the members of a School Board, the courts are not justified in inquiring into their motives, provided their action is otherwise legally justifiable. State ex rel. Miller v. Board of Education of Consolidated School Dist. No. 1 of Holt County, 224 Mo. App. 120, 21 S. W. (2d) 645; State ex rel. Gehrig v. Medley, Mo. App., 28 S. W. (2d) 1040, 1044. The Board cannot be expected or required to do the impossible, and insure that each child is transported on each school day at all hazards and irrespective of weather and road conditions. If such was the mandatory duty of school directors it would be difficult to find a responsible person who would be willing to serve on a School Board.

Ordered that the judgment of the circuit court be reversed. *McCullen, P. J.,* and *Anderson, J.,* concur.