STATE OF NORTH DAKOTA EX REL. J. J. BRAND v. THORWALD MOSTAD, Oliver Saugstad, and William McDermott, as Directors and the Members Constituting the School Board and Board of Directors within and for Bell School District No. 10, Ward County, North Dakota.

(148 N. W. 831.)

**Schools — consolidated — transportation of children.**
    1. Under § 232, art. 15, chap. 266, of the Laws of 1911, transportation must be furnished to children living more than 2½ miles from the district

Note.—A case somewhat similar to STATE EX REL. BRAND v. MOSTAD is that of Lyle v. State, 172 Ind. 502, 88 N. E. 850, in which it is held that under a statute providing that when a school has been discontinued, it shall be the duty of a township trustee to provide means of transportation for all pupils living a certain distance from the school to which they are transferred, or under a certain age; a township trustee cannot be compelled to cause such children to be taken from and returned to their several homes, but fulfils his duty by causing a proper convey-

school which they are required to attend, no matter whether such school is a consolidated school or not.

### Transportation of children — statute liberally construed.

2. Section 232, art. 15, chap. 266, of the Laws of 1911, which provides for furnishing transportation "to and from school" for children living more than 2½ miles from the schoolhouse, should be construed liberally, and not in accordance with the strict letter of the enactment.

### School board — reasonable discretion — discrimination.

3. School boards have the right to exercise all reasonable discretion in furnishing the free transportation which is provided for in § 232, art. 15, chap. 266, of the Laws of 1911, and it is not an abuse of such discretion, nor "an unjust or illegal discrimination," nor "a denial of transportation," to require boys of from ten to nineteen years of age to cross the frozen Mouse river, and to walk a distance of from ¼ to ⅓ of a mile to meet a team which has been sent for the children of two other families who live about a mile further on, when the river is reasonably passable for pedestrians, when all the three families live beyond the 2½ mile limit, and need to be accommodated, and the only other alternatives would be: (1) That the wagon with its load of children should go 2 miles out of its way to a bridge, returning 2 miles to the home of the plaintiff, subjecting its occupants to the cold and discomfort of 4 miles of unnecessary travel; or (2) that the board should hire two teams, one for each side of the river and at a probable expense of from $35 to $40 a month for each; or (3) that the loaded wagon should itself cross the river and run the risk of upsetting.

Opinion filed September 5, 1914.

Petition for mandamus to compel transportation of certain school children under § 232, article 15, chapter 266, of the Laws of 1911, *Leighton, J.*

Judgment for plaintiff.

Reversed.

ance to be driven over a route so established and maintained as to bring the conveyance within reasonable distance of the dwelling place of each pupil. This case, and the other cases on the question of duty of the public to furnish free transportation to pupils, appear in a note in 37 L.R.A.(N.S.) 1110.

The right to use school money for transportation of pupils is considered in a note in 38 L.R.A.(N.S.) 710, and the later cases on this question are collated in a note in 50 L.R.A.(N.S.) 428.

Statement by BRUCE, J.

This is an action in mandamus to compel the school board of School District No. 10, Ward county, to furnish transportation for the children of petitioner to and from a certain school located in said district. A demurrer was interposed to the complaint or petition, which demurrer was overruled and an answer interposed. An objection was also made upon the trial to the introduction of any evidence under the complaint, which was also overruled. The trial court made findings of fact and conclusions of law, and entered judgment directing the school board to furnish the transportation required. A motion for a new trial was made and denied, and this appeal was taken from the judgment and also from the order denying a new trial.

*E. R. Sinkler,* for appellants.

It is elementary that the powers and duties of school directors or trustees are derived wholly from the statute, and they cannot exercise any powers other than those expressly conferred. 25 Am. & Eng. Enc. Law, 2d ed. 56.

*Greenleaf, Pradford, & Nash,* for respondents.

All distances are to be covered by the conveyance used for transportation, and all pupils are to be given equal facilities for school attendance. Laws of 1911, chap. 266, p. 420, § 84.

BRUCE, J. (after stating the facts as above). The first point urged by counsel for appellant is that "the complaint does not allege, and the evidence does not show, that any election was ever called or had to determine the question of conveying pupils at the expense of said district to and from the school already established, and that there is no allegation in the complaint, and no evidence showing, that such school district was or is a consolidated school district, or that an election was ever had to determine the question of consolidating two or more schools." In other words, it is contended that the writ of mandamus will not lie because the school board has no authority to furnish the transportation ordered by the judgment to be furnished.

The sections of the statute involved are § 84, chap. 266, of the Session Laws of 1911, and § 232, art. 15, of chap. 266, of the Session Laws of 1911. Section 84, chap. 266, of the Laws of 1911 provides: "Con-

solidation. Conveying Pupils. The district board may call and if petitioned by one third of the voters in the district, shall call an election to determine the question of 'conveying pupils at the expense of said district to and from schools already established,' or 'of consolidating two or more schools, and of selecting a site and erecting a suitable building, or of making suitable additions to buildings already erected to accommodate the pupils of schools to be vacated.' Said elections shall be conducted, both as to notices and as to manner of canvassing the votes, in the same manner as the annual school election. If a majority of the votes cast at such election are in favor of conveying the pupils at the expense of the district to and from schools already established, or of consolidating two or more schools and of providing a suitable building for the accommodation of the pupils of vacated schools, then the board shall make all necessary arrangements to carry out the decision of the district. The board shall arrange for the transportation of pupils to and from such schools. It shall establish routes of travel, adopt rules and regulations for such transportation and shall contract with responsible parties for such transportation." Section 232, art. 15, chap. 266, Laws of 1911, is as follows: "School age. Who exempt from compulsory attendance. Every parent, guardian or other person who resides in any school district or city and who has control over any child of or between the ages of eight and fifteen shall send every such child to a public school in each year during the entire time the public schools of such district or city are in session. . . . If no school is taught the requisite length of time within two and one half miles of the residence of such child by the nearest route, such attendance shall not be enforced except in cases of consolidated schools where transportation may be arranged by the school board; provided, *that in districts where children live beyond the two and one-half mile limit and school facilities are not otherwise provided, the district board shall provide transportation for such children to and from school.* In districts having consolidated schools where transportation is arranged for by the school board, or in other districts providing transportation, attendance shall be required of pupils residing within five miles of such school or schools; but this provision shall not apply to deaf, blind or feeble-minded children in this state; provided further, that this section shall not be construed to apply to parents, guardians or other persons

having control of any child or children between the ages of eight and fifteen who desire to send such child or children for a total period of not exceeding six months which may be taken in one or more years, to any parochial school, for the purpose of preparing such child or children for certain religious duties."

As we understand § 232 of art. 15, chap. 266, of the Laws of 1911, which relates to compulsory school attendance, and in a large measure stands by itself, free transportation must be furnished to children living more than 2½ miles from the school, and compulsory attendance is required of such persons no matter whether the district is consolidated or not. Such being the case, there was no necessity for proof of an election, as the evidence is clear that the school was the only one to which the children could go. This disposes of the first point of appellant.

When we come to the merits of the case, however, we are not so well satisfied with the decision of the learned trial judge, nor with his finding that the respondents "unjustly and illegally discriminated against the children of said J. J. Brand, called the relator, and wholly failed to furnish transportation for said relator's children." There is, in our opinion, no material conflict in the evidence on the real issues in the case, and the only questions to be determined are whether the language of § 232, chap, 266 of the Laws of 1911, which provides for transportation "to and from school," is to be strictly construed so that in all cases children must be actually conveyed from their house doors to the doors of the schoolhouse, or whether a reasonable discretion in such matters has been left with the school board. Also, whether, if such discretion exists, there was an abuse thereof in the case at bar.

We are firmly of the opinion that the legislative intention was that actual transportation from the door of the home to the door of the schoolhouse should only be furnished as far as the same was reasonably practicable. In other words, that, though the statute is mandatory and cannot be avoided, it should be construed as if passed by reasonable men, and should be interpreted according to its spirit rather than according to its letter.

We must, indeed, in the construction of such statutes, exercise the common sense of the ordinary man, and be willing to concede that possession and the presumption of its exercise in others. The purpose of the act is plain, and that is the promotion of the cause of education and

the making it possible for children to comply with the compulsory educational laws without being subjected unnecessarily to the storms of winter. We can never believe that the good results of education were intended to be minimized by breeding a selfish, exacting, and effeminate race of boys. It is certainly within the province of the board to take into consideration the sex and age of the children to be carried. It must have been the intention of the legislature that some reasonable discretion should be exercised in the matter, and that, though conveyance from the house to the schoolhouse should be furnished as nearly as is reasonably possible, the letter of the statute should not be made the pretext for absurd and unreasonable exactions. The evidence in the case at bar shows that the board had the choice of the following methods: (1) To drive directly to their door, and to convey the children of petitioner directly to the schoolhouse, and at the expense of conveying the other children 4 miles out of their way, and exposing them to the risks and exposures of this unnecessary ride; (2) to hire an extra team and drive at the probable cost of $35 or $40 a month for the accommodation of the children of the petitioner alone; (3) to cross the river with the team at the risk of accident or of upsetting on account of the irregular banks, and the risk of breaking through the ice with the loaded wagon; (4) to do what was done in the case at bar, which was to stop the wagon within a short distance of the banks of the river, and to require the children of the plaintiff, who were boys between the ages of ten and nineteen years, to cross the frozen river and to meet the team. We must presume that the legislature intended that the board should exercise a sound discretion in such exigencies, and that the statute was passed under the presumption that the people for whom our various educational institutions are and have been maintained and endowed by both the state and the national government are worthy of the privileges conferred upon them, and possess that spirit of neighborly helpfulness and accommodation without which there can be no social progress and no true civilization.

We cannot hold that the board abused its discretion in the premises, nor hold with the learned trial judge that the children of the petitioner are "unjustly and illegally discriminated against," or that "transportation is wholly denied to them." We must remember that petitioner's children are not delicate girls, but boys of between ten and nineteen

years of age. The plaintiff lives some 3 miles from the Logan school district and on the west side of the Mouse river. On the same side of the river, but only a mile or so from the school, and therefore not entitled, as a strict statutory right, to the transportation provided in the section of the statute under consideration, is another man by the name of Stredvick. On the east side of the river, and about a mile further from the plaintiff himself, live two families of the names of Francis and Pennewell respectively. These families are both outside of the $2\frac{1}{2}$ mile limit, and are entitled to the transportation provided. In order to accommodate these two families and at the same time to accommodate that of the plaintiff and respondent, and if only one team is used, it will be necessary for the team to go some 4 miles out of its way after picking up the children of Francis and Pennewell, unless it can cross the river at a point east of the home of the plaintiff, or unless the children of the plaintiff themselves cross the river and meet the team at such a point, the place of meeting being from $\frac{1}{4}$ to $\frac{1}{3}$ of a mile from the home of the plaintiff, and the testimony showing, as we understand it, that the river is safe and reasonably passable for pedestrians in the winter months, and it is only in the winter months that the transportation under consideration is provided for. If neither of these methods can be adopted or routes traveled, it will be necessary to send two teams, one on each side of the river, that is to say, one on the east side for the accommodation of the children of the families of Francis and Pennewell, and one, at the expense of some $35 or $40 a month, on the west side for the accommodation of the family of the plaintiff Brand alone, or to cross the river with the team, which, on account of the steep and irregular banks and the risk of breaking through the ice, might be a dangerous undertaking. When we take into consideration the fact that the children of the plaintiff are boys, as well as all the other facts of the case, we are not prepared to say, and we believe that the trial court was not justified in saying, that the board abused its sound discretion in the premises or in any way violated the spirit of the statute.

The judgment of the District Court is reversed, and the case is remanded with directions to enter judgment dismissing the complaint.