STATE, EX REL. STEWART ET AL. v. MILLER, TRUSTEE.

[No. 23,983. Filed October 12, 1923.]

1. STATUTES.— *Construction.*— *Legislative.*— *Following Court's Construction.*—Repeated re-enactments of a law substantially the same as when it was construed by the Supreme Court will be deemed a legislative adoption of the construction then given it. p. 497.

2. SCHOOLS AND SCHOOL DISTRICTS.—*Transportation of Pupils.*— *Mandate.*—The transportation of pupils to and from school, except as specifically regulated by statute, rests largely in the sound discretion of the township trustee, subject to review by the county superintendent, and the courts cannot control it except when it is shown that the school officials have abused their discretion, and the courts will not undertake by mandate to direct the route that a school hack shall take. p. 499.

From Clinton Circuit Court; *Earl B. Stroup,* Judge.

Action on the relation of George Stewart and another against David R. Miller, Township Trustee, for a mandate against the latter. From a judgment for defendant, the relators appeal. *Affirmed.*

*Brenton A. Devol* and *Combs & Laymon,* for appellants.

*William Robinson* and *John L. Downing,* for appellee.

EWBANK, J.—The sufficiency of the facts alleged in the complaint to constitute a cause of action in mandamus is the sole question presented for consideration. A demurrer was sustained to the complaint of relators, as patrons of a certain school, to compel appellees, as the trustee of the township, and as the county superintendent of schools, respectively, to have the school wagon driven to relators' homes for their children.

The complaint alleged, in substance, that relators lived in an abandoned school district, from which the trustee had undertaken to and was transporting the children of school age to the Walters Brick School, in another district more than two miles away, that the Boyleston Gravel Road was a main thoroughfare that ran west from Frankfort through the school district, past the homes of all the school children in the district except the children of these relators, and that the trustee had established a route for the school wagon along that road, over which it went to the school each morning and back each evening; that a public highway ran north from said road three-fourths of a mile to the home of relator Young, crossing at grade a railroad over which four regular passenger trains and six regular freight trains were run daily, and passing the home of relator Stewart one-half mile north; that it did not connect with any other highway, but ended at Young's home, forming a *cul de sac;* that it was in a fit condition

over which to drive the school wagon; that one of the passenger trains passed over the crossing on said north highway each morning at about the time the children of the relator Young should leave their homes to meet the school wagon at Boyleston's Gravel Road; that after the children crossed the railroad track, said track cut off relator's view of them beyond it; that the children sometimes had to wait five to twenty minutes for the school wagon, and there was no shelter for them at the road intersection; that it was twilight in midwinter when the children of relator Young got to his home; that the school wagon could be driven to his home by driving half an hour longer at each end of the day, and still get all of the children home before dark; that he had two boys, aged seven and nine years, and the relator Stewart had two girls, aged eight and nine years, who attended said school, and who were shown by proper averments to be entitled to attend there; that relators had notified the trustee of said facts and requested him to cause said conveyance to be driven to their respective homes to receive and discharge the children, but he refused, and thereupon they duly appealed to the county superintendent, but he refused to order that this be done; that crossing the railroad on foot was dangerous for the children, and the many automobiles passing along the Boyleston Road at high speed made it dangerous for the children to wait there for the school wagon; and that it would cost no more to drive to the homes of the petitioners. There was no averment that the intersecting road was graveled or otherwise improved.

This action was commenced in November, 1920, and the amended complaint was filed on February 8, 1921, so that whatever change, if any, was made in the law by Acts 1921 p. 743, §6423o *et seq.* Burns' Supp. 1921, it did not affect the rights of the parties to this suit,

though we do not perceive wherein that act increased the rights of the relators. No question being presented as to the character or sufficiency of the means of conveyance, but only whether or not the vehicles provided should be brought nearer the homes of relators for the purpose of receiving and discharging passengers, the rights of the relators were those only which were conferred by the statute reading as follows: "That in all townships of this state where a school has been abandoned within the last twenty years, or may be hereafter abandoned, the township trustees shall provide and maintain means of transportation for all pupils of such abandoned school districts who live a greater distance than one and one half miles from the schools to which they are assigned; provided, that any township trustee may provide means of transportation for any pupils in any school district if the conditions in his township, in the judgment of the township trustee, warrant the same." Acts 1919 p. 66, §1. This act amended and superseded a statute (Acts 1917 p. 130, §1), which before had been in force two years, and had provided that township trustees must furnish means of transportation for all pupils who lived more than two miles, and for all under twelve years of age who lived more than one mile from the school to which they were assigned. The amended section, as above set out, is substantially a re-enactment of some provisions of the law on this subject as first enacted in 1907 (Acts 1907 p. 444) and afterward amended, except as to the distance from which pupils of an abandoned district must be carried to school. In deciding that the language of said act of 1907 (Acts 1907 p. 444, §2) which made it the duty of a township trustee to furnish means of transportation for all pupils of abandoned school districts who lived more than two miles from the school to which they were transferred, and for the smaller children who

lived more than a mile from such school, did not necessarily require such means of transportation to be brought nearer than a point on the main road leading to the school, three-fourths of a mile from the pupil's home, this court said: "Is it the duty of township trustees, under the provisions of the act of 1907 (Acts 1907, p. 444, §§6422, 6423 Burns 1908), to cause school children to be taken from, and returned to, their several homes in comfortable conveyances provided for that purpose? Or is that duty fulfilled by causing a proper conveyance punctually to be driven over a route so established and maintained as to bring the conveyance within a reasonable distance of the dwelling place of each pupil? * * * We cannot believe that the General Assembly intended that school children, of districts abandoned under the provisions of the statute, should be relieved of effort and incident exposure in going to and returning from school; or, in other words, that it was intended to furnish children in such abandoned districts with facilities and comforts superior to those enjoyed by school children generally throughout the State. It is clear that it was intended that such children should not have less than they, as a body, possessed before their own school was discontinued. * * * Turning then to the construction of the statute, it will be noted first, that the children who are over the age of twelve years and reside within a distance of two miles from said school, and children under twelve years who reside within one mile of the school to which they have been transferred, are not entitled to transportation by the trustees, but must make their own way to and from school. This exception is significant. It shows two things: (1) That the lawmakers did not intend to bestow special privileges and immunities upon the patrons and children of abandoned districts; (2) that, in the legislative judgment, two

miles in the one case and one mile in the other are not unreasonable distances for children to walk in attending the public school. Furthermore, if it was the purpose to relieve the children of the district from the fatigue of walking, both before and after spending the day in the school, the reason that the right· was not extended to all children of the district is obscure. * * * Being a matter of administration, the whole subject must necessarily rest largely upon the sound discretion of the trustee * * * an appeal may doubtless be had to the county superintendent" (citing the statute and several decisions). *Lyle* v. *State, ex rel.* (1909), 172 Ind. 502, 505-508, 88 N. E. 850.

After the time when a construction was thus given to the act of 1907 that it vested a discretion in the township trustee to determine whether or not

1. the school wagon should be driven down an intersecting road to the homes of persons living less than a mile from the main highway along which it was operated, the law relating to the transportation of pupils had been changed four times before this action was commenced, at intervals of two years or four years, but without changing it in the particulars which had been held to indicate that it was within the discretion of the trustee to require pupils living far from the school on a by-road three-quarters of a mile from the main highway to walk down to the main highway and meet the school wagon. Repeated re-enactments of those features of the law after the Supreme Court had given it a construction must be deemed a legislative adoption of the construction thus given it.

The same rule has been declared by the courts of other states in construing similar statutes. In a case in North Dakota where the relator's sons, aged from ten to nineteen years, had been required to cross a

small river that was frozen nearly all winter, and to walk a third of a mile to meet the school wagon, a judgment commanding that the wagon be driven some miles farther so as to pass the relator's door was reversed, the Supreme Court saying that although the duty of transporting the children was mandatory, a reasonable discretion was vested in the school board in determining how near to their homes the school wagon should be brought, and that the board had not abused its discretion in that instance. *State, ex rel.,* v. *Mostad* (1914), 28 N. D. 244, 148 N. W. 831.

And in a case in Ohio, where the father of a thirteen year old girl petitioned for a writ commanding the township board of education to bring the school wagon to his door, alleging that they required the child to meet it half a mile from her residence at a point where there was no shelter from cold and storms while waiting for it, the Supreme Court held that the acts complained of were within the discretion of the board as matters of administration, and that its discretion could not be controlled by mandamus. *State, ex rel.,* v. *Board of Education* (1921), 102 Ohio 446, 132 N. E. 16.

And in Pennsylvania, where the relator and his children lived back on a private lane that connected with a cross road one-half mile from an abandoned schoolhouse that stood beside the main road, and the officers of the school district required the children to walk down to this old schoolhouse and wait there for the wagon, a peremptory writ that had been awarded by the court of common pleas commanding the conveyance to be brought up to where relator's private lane entered the highway was set aside by the Supreme Court. *Commonwealth, ex rel.,* v. *Benton Twp.* (1923), 277 Pa. 13, 120 Atl. 661. If there are any authorities holding the contrary, our attention has not been called to them.

The facts alleged in the complaint, together with any

other pertinent facts, might properly be considered by the township trustee and the county superintend-ent in determining where the school wagon shall be driven. But so long as those officers are not shown to have abused the discretion vested in them by law the courts cannot interfere to control their action. Whether it was better for four small children to cross the railroad twice each day on foot, or for a school wagon with children in it to be driven across four times each day, was a question for the officers to decide in laying out a route for the school wagon. No error was committed in sustaining a demurrer to the complaint.

The judgment is affirmed.

Townsend, J., absent.