JOHN FLOWERS, Appellee, v. INDEPENDENT SCHOOL DISTRICT OF TAMA et al., Appellants.

No. 46538.

DECEMBER 12, 1944.

James H. Willett, of Tama, and Hoyt Crooks, of Washington, D. C., for appellants.

Hyland & Hyland, of Tama, for appellee.

OLIVER, J.—Appellee lived on a farm in the Independent School District of Tama. He had three daughters, aged twelve, eleven, and nine years, respectively, who attended elementary school in said district. His dwelling was situated on a graveled highway and was two and eight-tenths miles from said schoolhouse, measured on the public highway by the most practicable

route. From the school said route runs west on Highway 30, one and nine-tenths miles, thence north on the graveled highway nine-tenths mile to appellee's dwelling. Prior to the school term which commenced in September 1943, appellee's children had been regularly transported over this route back and forth between their home and the school in a motor school bus owned and operated by one Weaver, under contract with appellant school board.

The school-bus main trunk route was along Highway 30 but the route included several side trips to the homes of appellee and others which were situated upon highways intersecting Highway 30. Beginning with September 1943, the side trips upon intersecting highways were eliminated and the route was limited to the former main trunk route. Thereafter the bus picked up and discharged appellee's children at the intersection of Highway 30 and the highway upon which they lived. This required them to use other means to travel the nine-tenths mile between their home and the bus stop.

Thereupon appellee instituted this action in mandamus for an order commanding appellants to provide transportation for said children to and from their residence and the school. Appellants pleaded that they had eliminated the side trips in the exercise of their discretion, as a war-emergency measure, to save rubber tires, gasoline, and school-bus equipment, and that, under the circumstances, the transportation furnished was adequate. They also alleged such action was taken in compliance with requirements of the Office of Defense Transportation and the State Department of Public Instruction, and that it was for the duration of the war only. Upon trial the court ordered appellants to arrange for transportation for said children to and from the public highway in front of their home and in front of the school building.

I. Section 4233.4, Code of 1939, provides, in part:

"When children enrolled in an elementary school other than in a consolidated district live two and one-half miles or more from the school in their district or subdistrict * * * the board shall arrange with any person outside the board for the transportation of such children to and from school."

Code section 4233.5 states:

"Distance—how measured. Distance to school shall in all cases be measured on the public highway only and by the most practicable route, starting on the roadway opposite the private entrance to the residence of the pupil and ending on the roadway opposite the entrance to the school grounds."

The provision that the board shall arrange for the transportation of such children to and from school is mandatory. This has been pointed out in previous decisions and is not disputed by appellants. Riecks v. Independent Sch. Dist., 219 Iowa 101, 257 N. W. 546; Bruggeman v. Independent Sch. Dist., 227 Iowa 661, 668, 289 N. W. 5. But the statute has not been interpreted with particular reference to the language "transportation * * * to and from school."

The purpose of the statute is to afford children living two and one-half miles or more from school substantially the same educational advantages as those living nearer. However, we do not think it should be strictly construed as requiring in all cases that a school bus stop at a point in the highway in front of the home of each child to permit him to enter or leave the bus. Within reasonable limits, and without unreasonable discrimination, the board may determine the route and the times and places for bus stops to receive or discharge passengers. The statute should be given a reasonable and practical construction so that, without unnecessary burden to the school district, all children entitled thereto may be furnished transportation as nearly complete as is reasonably possible.

This is substantially the position taken by other courts in considering analogous provisions in their laws. In State ex rel. Brand v. Mostad, 28 N. D. 244, 248, 148 N. W. 831, 832, the court said:

"* * * the only questions to be determined are whether the language * * * which provides for transportation 'to and from school,' is to be strictly construed so that in all cases children must be actually conveyed from their house doors to the doors of the schoolhouse, or whether a reasonable discretion in such matters has been left with the school board. Also, whether, if such discretion exists, there was an abuse thereof in the case at bar.

"We are firmly of the opinion that the legislative intention was that actual transportation from the door of the home to the door of the schoolhouse should only be furnished as far as the same was reasonably practicable. In other words, that, though the statute is mandatory and cannot be avoided, it should be construed as if passed by reasonable men, and should be interpreted according to its spirit rather than according to its letter. * * *

"It must have been the intention of the legislature that some reasonable discretion should be exercised in the matter, and that, though conveyance from the house to the schoolhouse should be furnished as nearly as is reasonably possible, the letter of the statute should not be made the pretext for absurd and unreasonable exactions."

There is a like holding in Lyle v. State ex rel. Smith, 172 Ind. 502, 88 N. E. 850. State ex rel. Stewart v. Miller, 193 Ind. 492, 141 N. E. 60, follows Lyle v. Smith, supra, and cites State ex rel. Brand v. Mostad, supra, 28 N. D. 244, 148 N. W. 831, and other cases, with the observation that no authorities to the contrary have been called to the attention of the court. Walters v. State, 212 Wis. 132, 248 N. W. 777, also follows the rule and cites the foregoing cases. See, also, annotations in 63 A. L. R. 423, 118 A. L. R. 816, 146 A. L. R. 633. Although the cited decisions from North Dakota and Indiana involve transportation by horse-drawn school wagons, and some parts of the discussion are from that standpoint, the legal principles upon which those decisions are based are applicable to transportation by motor school bus.

II. Under powers given the President by the Second War Powers Act of 1942, 50 U. S. C. App., section 633, and by the President delegated to the Office of Defense Transportation, said office issued general order ODT 21, which, among other things, governs rubber-tired commercial vehicles, including school busses, and forbids their operation except under a Certificate of War Necessity.

Such certificate requires compliance with various requirements and policies calculated to save rubber and other materials, and limits the gasoline ration. One policy is to practically eliminate travel over branch routes to pick up or discharge students

who live less than one and one-half miles from a school-bus trunk route. Various decisions sustain the validity of the War Powers Act and procedure such as that above outlined. See Bowles v. Willingham, 321 U. S. 503, 64 S. Ct. 641, 88 L. Ed. 892; L. P. Steuart & Bro. v. Bowles, 322 U. S. 398, 64 S. Ct. 1097, 88 L. Ed. 1350.

The State Department of Education, in co-operation with representatives of the Office of Defense Transportation, arranged school-bus routes throughout the state which would comply with the requirements of the Office of Defense Transportation, and recommended such routes to school boards. The route recommended to appellants was what had been the main trunk route. Appellants considered the foregoing matters, decided to eliminate the side trips from the route, as recommended, and in September 1943, made a contract with Weaver which embodied this change. Appellee concedes this was not an attempt to discriminate against him.

Although the regulations of the Office of Defense Transportation did not supersede or modify the statutory duties of the school board, such regulations did prevent the operator of a school bus from securing a Certificate of War Necessity to operate over other highways than the main trunk route. Hence, it was no longer reasonably possible for the board to arrange for such transportation for appellee's children for the nine-tenths mile between their home and Highway 30. There is no suggestion that any other method of transportation would have been practicable.

It appears from the record that the former plan of operation of the school bus was practicable under the conditions then existing and would still be feasible were it not for the war and the resulting emergency legislation and regulations. However, we are satisfied that, under the conditions shown by the record, it was not reasonably practicable for the school board to arrange for the transportation of appellee's children between their home and the school-bus trunk route on Highway 30.

Hence, we conclude the judgment commanding the board so to do was erroneous.—**Reversed.**

All JUSTICES concur.