CURTIS RANDOLPH, Plaintiff-Appellant, *v.* SCHOOL UNIT 201 *et al.*, Defendants-Appellees.

(No. 70-77; )

Third District—May 18, 1971.

*Rehearing denied June 14, 1971.*

STOUDER, J., dissenting.

Clarence W. Shoemaker, of Aledo, for appellant.

James C. Allen, of Aledo, and Eagle & Eagle, of Rock Island, for appellees.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

This cause is before us as a result of an action seeking to force the defendant school district (School Unit 201) to provide bus transportation to plaintiff's children at their home at the end of a dead-end road which was from .4 to .5 of a mile from the through road where the children are being picked up. Plaintiff Curtis Randolph had two children who attended the school.

The defendant school district adopted a rule providing that the school district would not run their school buses on dead-end roads which were less than one and one-half miles in length. The plaintiff's children were picked up at an intersection of a dead-end road and the through highway which was .4 to .5 of a mile from the home where plaintiff's children lived. In plaintiff's action in the Circuit Court of Mercer County the exact nature of the action is not specified, but we have determined that it is in the nature of a mandamus action to force defendant school district to pick up the plaintiff's children referred to. At the hearing in this cause in the Circuit Court, evidence was offered by plaintiff that school buses of defendant school district picked up children of Robert Dunn, Hugh Nesbitt and a Mr. Lower, when they either lived on a dead-end road or where the road beyond their houses was not passable at all times. In these instances there was also evidence that the roads to the houses were either through roads or had been through roads when the pick-up station was originally established.

The problem before us, however, is specifically whether the action of the defendant school board in establishing the rule to pick up school children living less than one and a half miles down a dead-end road was arbitrary or capricious and invalid.

■■ In the Illinois Revised Statutes (ch. 122, par. 29—3, 1969 Illinois Revised Statutes) it is specified that school boards shall provide free transportation for pupils residing at a distance of one and a half miles or more from any school to which they are assigned or attendance maintained within the district, and that for purposes of that act, "adequate transportation for the public" shall be assumed to exist for such pupils as can reach the school by walking one way less than one and a half miles irrespective of the distance a pupil is transported by public transportation. Within the framework of this statute, the school board may set up reasonable rules and regulations for operation of school buses in their particular districts. The statute does not require that the school district buses pick up every child who lives more than one and a half miles from school at his or her front door. The defendant school board, in the cause before us, established a rule that it would not operate school buses down a dead-end road which was less than one and a half miles long. We believe that this was a reasonable regulation and was not arbitrary or capricious.

■■ As pointed out in the case of *Lombardo v. Board of Education of School District No. 27*, 100 Ill.App.2d 108, 241 N.E.2d 495, 498:

"We are not at liberty to interfere with the discretionary authority vested in the School Board absent arbitrary or capricious action."

While the *Lombardo* case involved a teacher dismissal action, the rule

is applicable to the instant case. As we had also indicated in *Ottawa Township High School District No. 140 v. County Board of School Trustees,* 106 Ill.App.2d 439, 246 N.E.2d 138, the judiciary is ill equipped to act as a super school board in assaying the complex factors involved in determining the best interests of schools and pupils affected. That case involved a boundary change but the principle is still applicable.

Several problems are inherent in turning a large school bus around in a private driveway or dead-end road. Often in bad weather it could become stalled, as private driveways or dead-end roads are usually not as well maintained as through roads are. There is a concern that a dead-end road of less than one and a half miles in length will not, as a practical matter, be maintained as well as a through road, and at times when snow must be removed, through roads are given preference. There is also the problem of driving the bus back onto the through highway from the dead-end road. While there appears to be no Illinois case which has passed directly upon the reasonableness of such regulation, the courts of other states have upheld similar regulations as being reasonable (*Flowers v. Independent School District of Tama,* (Iowa 1944), 16 N.W.2d 570; 79 CJS, Schools § 481, Page 421). In the *Flowers* case referred to, the children walked .9 of a mile along a secondary road to catch a bus on the main highway. The court there stated that within reasonable limits and without unreasonable discrimination, the board may determine the route and the times and places for bus stops to receive or discharge passengers.

In the case of *People v. School Directors of Dist. No. 108,* 58 Ill.App.2d 282, 288, where a mandamus action was brought to force the district to provide transportation for children from a Sterling area to the Willow School, the court stated (at page 286):

"The suit was brought with reference to all children living in The Sterling Estates. It is not necessary for the litigants or the court to concern themselves under this suit with other children living in the district."

The issue before us is whether the school board rule was reasonable. Even if we consider the two instances which plaintiff cites as being discriminatory, it appears that there was evidence in one instance that there was a through road where the pick up was made, and, in the other instance, there had been a through road when the bus route was first established. ■■ *Mandamus* itself is an extraordinary remedy and one seeking the writ must show a clear right to it (*Daniels v. Cavner,* 404 Ill. 372). The *mandamus* action could not be used to control discretion that a board is properly exercising in adopting a rule such as the one in the present case. The school board had authority to determine the route and

the time and place for gathering school children within reasonable limitations. We believe that the board exercised reasonable discretion in determining where the plaintiff's children should be picked up.

If in fact there is improper discrimination in bus service to other children in violation of the regulation, such violation should be terminated. On the basis of the action before us, however, we must conclude that the regulation adopted by the school board is reasonable and should be approved. To hold otherwise would require that each child be picked up at his doorstep irrespective of the practical matter of operating buses and without any attention to safety considerations.

On consideration of the record in this cause, therefore, we conclude that the judgment of the trial court was proper and should be affirmed.

Judgment affirmed.

SCOTT, J., concurs.

Mr. JUSTICE STOUDER dissenting:

I am unable to agree with the majority of the court. In my opinion the complained of action of the School District was arbitrary and unreasonably discriminatory and the plaintiff was entitled to relief against such action.

I am entirely in accord with the general principle stated by the majority that the School District has discretion in providing transportation facilities in accord with the statute requiring free transportation when the pupils reside more than one and a half miles from the attendance center. I further agree that the statute does not require pupils to be picked up at their doorstep or immediately in front of their homes. However plaintiff made no such claim. The major thrust of his action is that the Randolph children were not provided bus service on the same basis as the service provided to other children similarly situated.

In 1959, the School District adopted the following motion as its bus transportation policy, "All regular pick up and discharge stations to and from buses for pupils of Community Unit School District No. 201, shall be only on a through way, all weather surfaced road." Based on such policy the District in its affirmative defense alleged, "3. That the operating policy of the defendant Board of Education in furnishing free bus transportation to pupils limits the operation of buses under its control to highways having an exit at both ends thereof, and does not include operation on dead-end roads or lanes."

So far as the general language of the District's transportation policy quoted above is concerned the ordinary meaning thereof would appear to represent a reasonable exercise of discretion. However the application

or interpretation of such policy as disclosed by the facts present different questions.

Counsel for the District in his argument in the trial court and in this court insists that so long as the children did not have to walk more than a mile and a half the District's discretion was reasonable and was not subject to question. The District's attorney neither denied nor endeavored to justify the uncontradicted evidence that bus service was provided for the children of two other families from in front of their houses when such houses were situated at the time of trial on roads which were not through roads and upon which the houses were located less than one and a half miles from a through road. The road beyond the house of one of the families was described as a narrow dirt road without drainage not used by the family except in connection with the farming operation. It was also uncontradicted that the section of the road beyond this house was not either at the time of trial or prior thereto suitable for use by a school bus. It is uncontradicted that the other family living a similar distance from a through road as that of the plaintiff's family, was at the time of trial not located on a through road but had been so located at some indefinite time in the past.

If as suggested by the majority there is something in the nature of non through roads which may justify differences in use by school buses the reasons which support such classification or distinction are equally applicable to the other two families described. Neither of such families lives on a through road as described in the transportation policy. As so interpreted the policy lacks a rational basis for classification and is therefore arbitrary and unreasonably discriminatory. Alternatively it can only be concluded the Board ignored its own rule and the unjustified disregard thereof is equally arbitrary and constitutes unreasonable discrimination.

In *Flowers v. Independent School District of Tama*, (Iowa, 1944) 16 N.E.2d 570, (cited in the majority opinion) the court approved the action of the School Board in limiting bus routes to main roads. As described by the court the reasons for approval of such action related to the limitation in the use of rubber and gasoline imposed by war conditions. Furthermore according to the court, "Appellee concedes this was not an attempt to discriminate against him."

In *State ex rel. Clarence Miller et al. v. Joint School Dist. No. 1*, (Wisc. 1958) 92 N.W.2d 232, the court approved the discretion of the school board as reasonable again specifying, "There is no indication that the children mentioned in the petition were treated in any way differently from other children similarly situated."

In *People v. School Directors of Dist. No. 108*, 58 Ill.App.2d 282, (cited

in the majority opinion) the court apparently dismissed any claim of arbitrary or discriminatory action by the school board with the observation that consideration of the issue was unnecessary. The opinion in the foregoing case offers no particular support for the result reached by the majority and appears to have avoided discussion of issues which might have made the decision relevant to the case at bar. There is certainly no intimation by the court that children similarly situated may be treated differently.

In some aspects this case may be regarded as without any great significance. It involved only one family and no new or novel rule of law. Nevertheless the principle that citizens are entitled to equal protection of the laws is a principle of great substance and requires that courts firmly disapprove action of governmental agencies unreasonably discriminating between persons similarly situated. Suggesting that the result reached by the majority is authorized by rules relating to the issuance of writs of *mandamus* tends to obscure the real issue particularly where equitable principles and injunctive relief may be equally applicable.