S. T. PETER, Appellant, v. EMIL J. KAUFMANN ET AL.—38 S. W. (2d) 1062.

Division One, May 21, 1931.

*W. L. Cole* and *T. P. Hukriede* for appellant.

*James Booth, Virginia Booth, Jesse H. Schaper* and *Randolph H. Schaper* for respondents.

STURGIS, C.—This is a suit to enjoin the collection of school taxes. St. Clair Consolidated School District No. 1, Franklin County, at the annual school meeting on April 5, 1927, voted to levy 35 cents in excess of 40 cents on the $100 assessed valuation for school purposes, and 100 cents on the $100 assessed valuation for building purposes. The plaintiff, claiming these tax levies to be void, alleges that same have been certified to the county clerk and by him extended on the county tax books and same turned over to the county collector for collection; that such illegal taxes are thereby made an apparent lien on plaintiff's lands situated in such school district, of which he is a resident taxpayer. The defendants are the county clerk, county collector, the school district and its board of directors.

As his grounds for injunctive relief against enforcing the lien of these taxes against his land, plaintiff alleges that said school district was already indebted to the extent permitted by law and the Constitution of this State, Section 12, Article X, that is, five per centum of its assessed valuation, by reason of previous and yet outstanding bond issues; that the defendants had spent all the money so borrowed on the bond issues in erecting a school building, and "after spending the proceeds of the sale of said bonds they illegally incurred an indebtedness of approximately $12,000 for the completion of the building started by them and for equipping same."

Such being the financial condition of the school district at the time of the annual school election in April, 1927, plaintiff in his petition further alleges:

"That on the 5th day of April, 1927, the said board of directors, at the annual meeting of said school district, at the schoolhouse in said district, and the election held thereat, undertook to submit to the qualified voters of said district (no proper notice having been given as provided by Section 11153, Revised Statutes 1919), among other propositions, the following: 'For $1.00 building levy,' intending thereby to vote a levy of 100 cents on the $100 valuation for building purposes; and the following proposition: 'For 35 cents excess levy,' thereby intending to vote a levy of 35 cents in addition to the 40 cents on the $100 assessed valuation for school purposes, and provided the following ballot for said purpose:

" 'For $1.00 building levy.'

" 'Against $1.00 building levy.'

" 'For 35 cents excess levy.'

" 'Against 35 cents excess levy.'

"That the purported building levy of $1.00 so attempted to be voted on was for the purpose of paying the indebtedness of $12,000 which said board of directors or board of education had created in addition to the bonded indebtedness of the district and an indebtedness in addition to the amount which they were allowed by Section 12, Article X, of the Constitution of Missouri, to create, which said indebtedness was illegal and void.

"That the said proposed levy so submitted by said board to said voters of said district and so voted on at said election and certified by the judges of said election to said board of directors of the said St. Clair Consolidated School District No. 1 was illegal and void in this, to-wit:

"First. That no notice of said election and the proposition to be voted on had been ordered or given by said board of directors of the said St. Clair Consolidated School District No. 1, as provided by Section 11153, Revised Statutes 1919.

"Second. That said ballot voted at said election by the voters voting thereat did not indicate the will or intent of the voters and is illegal in form and void.

"Third. That no legal election was held in the school district to vote on said proposed increase of tax.

"Fourth. That the said proposition, 'For $1.00 building levy,' here provided in ballot used in said election, is illegal and void, in that the said proposed levy, the same having been certified to as adopted and ratified by more than a majority of the voters voting thereon at said election, was for the purpose of paying off the $12,-000 illegal indebtedness which had been created by the board of directors or board of education, and was in excess of the limit prescribed by Section 12, Article X, of the Constitution of Missouri.

"Fifth. That at said pretended election so held as aforesaid on the 6th day of April, 1927, the said proposition on said ballot, 'For

35 cents excess levy,' and which proposition has been certified to as adopted and ratified by more than a majority of the voters voting thereon at said election, was in violation of law and void; that no legal notice had been given as provided by Section 11153, Revised Statutes 1919, and the ballot used was illegal in form and void.''

As to plaintiff's contention that no proper notice had been given embodying these propositions to be voted on at the annual meeting in April, 1927, at which meeting these levies were voted, his contention seems to be only that the school board did not specifically order notices to be posted embodying these propositions to be voted on. The regular record or minute book of the proceedings of the school board, as originally written up, shows the following, among other transactions of the board, under date of March 1, 1927:

''Various sundry matters of the board relative to building were discussed with Mr. Senne (architect).

''A checkup of building costs indicated a possible deficit of $11,-790.40. This to be taken care of in tax levy.

''Motion by E. C. Johnston, seconded by A. Raaf, to hold election April 6 (5), 1927, in High School Building, carried unanimously.

''Motion by E. C. Johnston, seconded by R. J. King, to prepare following ballot, carried unanimously:

''For $1.00 building levy

''Against $1.00 building levy

''For 35 cents excess levy

''Against 35 cents excess levy.

''Motion by A. Raaf, seconded by E. C. Johnston, to put following names for directors on ticket, carried unanimously: F. P. Weatherford, R. J. King.

''Meeting adjourned.

''Signed by President and Secretary.
''Approved April 6, 1927.''

The notice of such annual school meeting, which was properly and timely posted, reads:

''ANNUAL SCHOOL ELECTION NOTICE.

''In compliance with Sec. 11209, R. S. 1919, notice is hereby given to the qualified voters of Consolidated School District No. 1 of Franklin County, Missouri, that the annual school election of said district will be held at the High School Building of said district on Tuesday, the 5th day of April, 1927, beginning at 7 o'clock a. m. and closing at 6 o'clock p. m. of said day.

''The following are proposed:

''To elect two directors for a term of three years each.

''To vote a levy of 100 cents on the $100.00 assessed valuation for building purposes.

"To vote a levy of 35 cents in excess of 40 cents on the $100.00 assessed valuation for school purposes.

"To vote for a person to fill the office of County Superintendent of Public Schools.

"This 21st day of March, 1927.

"A. RAAF,
"Secretary of Board of Directors."

A. Raaf, who signed and posted up these notices, was shown to be the regular secretary of the board.

It is true that the minutes of the board meeting on March 1, 1927, do not show a formal order of the board directing the secretary of the board to post these notices, or prescribing what the notices should contain, but we decline to hold that this is a fatal defect. The statute fixes the time and place of holding the annual school meeting (Sec. 11209, R. S. 1919), of which all persons take notice. The powers and duty of the annual meeting so provided for are for the most part fixed by statute. [Sec. 11210, R. S. 1919.] However, when the rate of taxation for school purposes is to be increased (that is, more than 40 cents on the $100 assessed valuation), the school board is required to determine the increased rate and submit the question of increase to a vote of the taxpayers, and this may be done at the annual meeting when included in the notice thereof. [Secs. 11151 and 11152, R. S. 1919.] Likewise, when it is desired to increase the annual rate of taxation for erecting school buildings or furnishing or repairing same, the board shall determine the rate necessary and submit same to the voters of the school district either at a special election or the annual meeting, proper notice thereof being given. It seems to us, however, that the minutes of the board meeting on March 1, 1927, while brief and informal, show that the school board did determine a rate of increase both for ordinary school purposes and for building a schoolhouse, which were to be submitted to the voters at the coming annual school meeting. The minutes just mentioned clearly show that the school board made a checkup with the architect and found that $11,790.40 would be needed for cost of building. Then the election was called, though the law does this and fixes the time and place. Then it was ordered that ballots be prepared for use at the election submitting to the voters the propositions of a levy for building purposes of 100 cents on the $100 assessed valuation and an increase or excess levy of 35 cents on such valuation for school purposes. Clearly, the clerk, whose duty it was, under the law, to prepare and post the notices of the election without any special order to do so (Sec. 11221, R. S. 1919), fully understood this and in the notices of the election fully set forth the two tax propositions to be voted on, to-wit:

"To vote a levy of 100 cents on the $100 assessed valuation for building purposes.

"To vote a levy of 35 cents in excess of 40 cents on the $100 assessed valuation for school purposes."

It is these notices which the voters see and consult in order to determine what propositions are to be voted on and decided at the annual meeting, and if the notices impart intelligent information as to this, that is all that is required.

A criticism of the notices posted is made in that when speaking of the tax for building purposes the whole rate of 100 cents on the $100 valuation is mentioned as being submitted, and in the other proposition for school purposes the excess of 35 cents over the 40 cent levy is mentioned instead of the whole 75 cent levy. This, however, is in strict accordance with the law, since in levying a building fund tax there is no ordinary or minimum tax rate to be levied, regardless of any vote thereon, and hence the whole tax is to be voted on; while for ordinary school purposes a 40 cent levy or less is regularly made without any vote thereon, and it is only the excess above that amount which is to be submitted to a vote.

It also appears from the record here that the school board of this Consolidated School District, at a meeting held in July, 1927, corrected the minutes of the meeting held on March 1, 1927, by a *nunc pro tunc* order. It is conceded that the minutes as corrected show every essential act necessary to be taken in order to lawfully submit these increased tax levies to the voters at the annual school meeting. The only objection is that the school board did not have the authority to correct the minutes of its previous meeting so as to make the same speak the whole truth. Besides this correction of the minutes, the clerk of the school district testified that the board made this correction in order that the minutes would read as actually happened. "When I wrote the minutes, at that time I was not familiar with the legal phraseology and all of that, and I failed to get down the real intent of the members of the board. I did not find that the record did not meet the requirements of the law and then rewrite them to meet it. The new minutes state the facts as they actually happened."

It seems now to be well settled that the board of directors of a school district have the power to correct the record of the proceedings had at a previous meeting so as to make the same speak the truth, especially so when the correction consists of supplying some omitted fact or action, and is done, not to contradict or change the original record, but merely to have the record show, in accordance with the truth, that a certain action was taken or thing done which the original record fails to show. Parol evidence is also admissible for the same purpose. [Tucker v. McKay, 131 Mo. App. 728, 732;

State ex rel. v. Hackmann, 277 Mo. 56, 60, 63; State ex rel. v. Mc-Kown, 315 Mo. 1336, 1347; State ex rel. v. Guinn, 309 Mo. 291, 300.]

There is nothing to suggest that any voter was in any way deceived or misled by the action taken by the school board or by the notices posted or the ballots used at the election. The voters understood the propositions submitted and the will of the voters was ascertained. [Jacobs v. Cauthorn, 293 Mo. 154.] The result of the election was as follows:

For 100 cents building levy ....................... 149 votes
Against 100 cents building levy ..................... 44 votes
For 35 cents excess levy .......................... 171 votes
Against 35 cents excess levy ....................... 20 votes.

We, therefore, overrule plaintiff's contentions as to these matters.

It is next contended that the levy of 100 cents on the $100 valuation for building purposes, which received more than a two-thirds majority vote at the annual school election in question in some way violates the provisions of Section 12, Article X, of the Constitution. That section of the Constitution is a limitation on the power to incur indebtedness by municipal corporations and prohibits school districts and like political corporations from "becoming indebted in any manner, or for any purpose, to an amount exceeding the revenue provided for the year, without the assent of two-thirds of the voters voting at an election called for that purpose;" and in no event to an amount exceeding five per centum of the assessed value of the property therein. The evidence here shows that at the time the tax in question was voted by this school district it was indebted to practically the full amount of the five per centum limitation and could not therefore increase its indebtedness by any substantial amount, but we fail to see how the voting of a tax levy of any amount can or does increase or create an indebtedness; it has the opposite effect. An analysis of plaintiff's contention shows that what he means is that the school board had already created, or caused it to incur, an indebtedness in excess of the constitutional limit and that the tax levy in question was not to be used to erect a school building but to pay an excess and void indebtedness already incurred. If this be true, it is apparent that the Constitution had in some way and at some previous time been violated, and that now the school district was levying taxes to pay a void debt. This is the burden of plaintiff's contention.

Laying aside, for the present at least, the question of whether or not the present suit to enjoin the collection of the entire tax levy is a proper remedy to reach the wrong complained of, we will concede that the school district has no right to levy a tax and force

collection of same against plaintiff's property to pay off a debt illegally incurred and void as being in violation of the constitutional inhibition. The trial court evidently found against plaintiff's contention that the school board as individuals, by misfeasance, or the school district as a corporate body, had already become indebted to an amount of near $12,000 in excess of the outstanding previous bond issues equalling five per centum of the assessed valuation and were now levying taxes to pay such excess. The record justifies this finding. The evidence shows that the school board had planned a building which, when completed, would cost considerably more than the proceeds of the bond issues. The plan was to complete parts of the building with the money on hand and then trust to the voters to vote a tax for building purposes and with the additional fund so obtained add to and complete the building. At the time the school board met on March 1, 1927, the school building was under construction, but what part was or could be finished with the money on hand is not shown except by the board minutes reciting: "A checkup of building costs indicated a possible deficit of $11,790.40. This to be taken care of in tax levy." It also appears that in making contracts for certain portions of the work it was specified that only eighty-five per cent of the amount should be due and payable before the completion of the building. The building was so far completed by September 1, 1927, that it was then used for school purposes, but portions of the planned structure had not been completed or perhaps commenced. At the time of the trial in November, 1927, there were unpaid warrants outstanding amounting to $2,261.80, issued after the school election in anticipation of this tax levy being collected. All other debts in connection with the building had been paid. The taxes under the present levy would be collected for the most part in December, 1927, and January, 1928. The clerk testified that with the money derived from this tax levy for building purposes the building could be practically completed and paid for, inclusive of the then outstanding warrants. "No members of the board, by themselves or with others, signed obligations by which they bound themselves to pay any amount over and above the bonded indebtedness of the school district." The situation, therefore, was that if the taxpayers had refused to vote this 100 cents building levy for 1927, the school building could not have been completed as planned, and what would have been done in that event is purely a surmise. With the additional amount derived from this tax levy, the building would be substantially completed and paid for. It was not, therefore, a question of paying an indebtedness already incurred and which was void as being an excess indebtedness above five per centum of the assessed value, but a question of voting a tax levy

to provide means for completing a portion of the building as planned, needful but not absolutely essential to its use as a school building. It appears that the auditorium and sidewalks were the principal parts to be added and paid for.

Under these facts, we hold that this school district did not violate any constitutional or statutory provision in voting either or both the levies in question. We have seen that such could not violate the provisions of Section 12, Article X, of the Constitution limiting the amount of indebtedness which can lawfully be incurred. Nor does it violate, as is claimed, the provisions of Section 11, Article X, of the Constitution limiting the rates of taxation which may be levied. That section provides that in school districts like this one the annual tax rate for school purposes shall not exceed forty cents on the $100 valuation, giving city and town school districts the privilege to increase such rate to not to exceed 100 cents on the $100 valuation, by a vote of the majority of the voters voting at an election held for that purpose. Then there is the further express provision that school districts may increase such tax rates for the purpose of erecting school buildings when such increased rate and the purpose for which intended shall receive a two-thirds majority vote of the voters voting at an election held for that purpose. No limitation as to amount is fixed by the Constitution to this rate for erecting buildings, but our statute fixes a limit of 100 cents on the $100 valuation. As we have seen, the increased levy for school purposes now in question received more than a majority vote, and the 100 cents building levy received more than a two-thirds majority of the votes cast.

There is manifestly two methods contemplated by the Constitution for raising funds to erect school buildings by school districts. One is by incurring indebtedness in some form, as by issuing bonds or borrowing money in some form. Limitation on this method of raising money is imposed by Section 12, Article X, of the Constitution and also by various statutes. The second method of raising money to build school houses is by levying annual taxes for that purpose. A school district which does not wish to issue bonds or borrow money to erect a school building may do so by levying a tax for that purpose for one or more years. Section 11, Article X, of the Constitution places limitations on the annual rates of taxation which can be levied for school purposes, which term is construed to cover all the usual and ordinary expenses of maintaining and operating schools. [Hudgins v. Consolidated School District, 312 Mo. 1, 12.] But, as we have seen, the only limitation on the rate of taxation for buildings is that such rate and the purposes thereof shall be submitted to a vote of the people of the dis-

trict and receive the sanction of a two-thirds majority of those voting. Therefore, no building tax, whatever the rate, which has received a two-thirds majority vote of the voters of the district at a legally called election can be held violative of the Constitution. A limitation of 100 cents per $100 valuation is fixed by statute, Section 11183, Revised Statutes 1919. A levy for building purposes and erection of buildings is a separate and distinct tax not included in term "school purposes" and not subject to the limitation as to amount imposed by the Constitution. [Hudgins v. Consolidated School District, 312 Mo. 1, 12.] It stands on its own foundation, unhampered by other levies, and being within the limits fixed by statute, it cannot be held to be excessive or violative thereof.

We see no reason why a school district, having the power to use either method of raising funds to erect school buildings, may not use both concurrently or supplement one method by the use of the other in case of a deficiency. We see no reason why a school district desiring to erect two buildings to cost $10,000 each may not adopt the plan to issue bonds to build one and then levy a tax for one or more years to build the other, or, if it borrows money by a bond issue to build a $20,000 building and concludes that an addition thereto costing $5,000 is necessary or highly desirable, why it may not raise the amount necessary for this purpose by a tax levy instead of another bond issue. The handicap of erecting buildings by annual taxes extending over a series of years is that the tax must be voted annually and receive a two-thirds majority. The voters may at any election withdraw their support of any such plan, however meritorious. The evils against which the taxpayer is guarded by the constitutional limitations are fully preserved by the fact that any tax for buildings must receive a two-thirds majority and must be acted on anew every year.

The plaintiff cites the case of Harrington v. Hopkins, 288 Mo. 1, 10, in support of his contention, but that case holds no more than that a school tax levied for the purpose of *repairing and furnishing* a school building already erected is a part of the tax "for school purposes," the aggregate of which is limited to 100 cents on the $100 valuation, and is not an independent tax for erecting public buildings not subject to such limitation.

Also the case of Jacobs v. Cauthorn, 293 Mo. 154, 238 S. W. 443, is to the same effect and holds that a tax for a *building and repair* fund receiving only a majority vote is void. The court said: "The purpose for which said increase was voted was not to erect a school building, but such increase, as stated in the notice and on the ballots, was for 'building and repair fund.' If the voters of the district had intended to erect a school building, then it would have

been legitimate to vote an increase beyond the maximum fixed by the Constitution, but in such case, both under the Constitution and by statute, it would have been necessary for a submission of that question to the voters, and an authorization by two-thirds of the qualified voters present and voting on said proposition. From the bill and the proof in this case we mush hold that the increase was only for repairing and furnishing the school building. Therefore the facts here are controlled by the decision of Harrington v. Hopkins et al., supra.''

These cases do not militate against what we hold here, for the tax in question is designated in the notice of the election as ''a levy of 100 cents on the $100 assessed valuation for building purposes,'' and received more than a two-thirds majority of the votes cast.

Our present ruling is in accord with Hudgins v. Consolidated School District, 312 Mo. 1, 12, where the court upheld a bond issue ''for the purpose of purchasing a site, erecting a building and furnishing the same,'' as not being within the term ''school purposes'' as used in the Constitution, but as being within the term ''erecting public buildings.'' The court there said: ''The constitutional limitation in Section 11, as applied to a levy of taxes by school districts, has reference to the annual rate of such levy for school purposes for that year. By 'school purposes' as the term is used in the Constitution, is meant such annual expenditures as are necessary to the conduct or maintenance of the school during the year. [C. & A. Ry. Co. v. People, 163 Ill. 1. c. 621.] The fixed rate in districts, as at bar, *for school purposes,* is forty cents on the hundred dollars' valuation of the property of the district. This rate may be increased for the same purpose, by a majority vote of the people, to sixty-five cents on the hundred dollars' valuation (100 cents in town districts). These limitations, however, have no application to the creation of a debt for building purposes and the equipment of such buildings as may be erected.''

Recurring again to plaintiff's contention that while the tax in question is ostensibly levied for building purposes, it is in reality to be used in paying a building indebtedness already incurred: We have seen, however, that such contention is not supported by the trial court's finding on the facts. While injunction is a proper remedy, and the courts will restrain the collection of a tax levy which is clearly void as being a levy without any authority or in contravention of some constitutional or statutory provision, yet when such tax levy' is within the power of the taxing body and is not violation of positive law, the courts will rarely enjoin its collection. In Lyons v. School District, 311 Mo. 349, this court held that where the complaint is that a levy of taxes was made for

the fraudulent purpose of diverting the funds raised by such levy to other purposes, and that same was not intended to be used for the purpose for which the levy appears to have been made, the court will not enjoin the collection but will leave the matter complained of to be dealt with when the attempt to divert is made. [Pope v. Lockhart, 299 Mo. 141, 146.]

We hold, therefore, that the trial court ruled correctly in denying the relief prayed for and dismissing plaintiff's bill. The judgment appealed from is therefore affirmed. *Ferguson* and *Hyde, CC.*, concur.

PER CURIAM:—The foregoing opinion by STURGIS, C., is adopted as the opinion of the court. All of the judges concur.