BONSACK & PEARCE, INC., RESPONDENT, v. SCHOOL DISTRICT OF MARCELINE, APPELLANT.—49 S. W. (2d) 1085.

Kansas City Court of Appeals. May 2, 1932.

*Fry, Hollingsworth & Francis* and *Thos. P. Burns* for respondent.

*Charles K. Hart* for appellant.

BOYER, C.—Plaintiff is an incorporated company engaged in the business of an architect and defendant is a town school district. Plaintiff sued on a contract to recover for architectural services rendered and for the loss of prospective profits which it would have earned if it had been permitted to complete the contract. The contract is made a part of the petition. It was executed May 29, 1929,

and was signed by the president and secretary of the plaintiff under its seal, and signed by the president and secretary of the school board of the defendant district. By its terms plaintiff agreed to furnish complete architectural and engineering services required in a proposed school building program to be decided upon by the school board after the architect submitted a report upon the condition of school buildings, and after sketches and estimates of cost and of construction work necessary to meet the needs of the district were submitted. Plaintiff was required to furnish sketches, estimates of cost, and a water color picture of proposed new work for use in submitting a proposition to vote bonds, and the contract was to be void if the proposed bond issue should fail to carry within six months. The services to be rendered by plaintiff also included conferences, working plans, scale and full size details, engineering drawings, heating, plumbing and equipment layouts, specifications, and general supervision of the work. It was agreed that in consideration of said services the district would pay a sum equal to five per cent of the total cost of the entire building construction work and the contract provided a method of installment payment as the work progressed.

Plaintiff proceeded with the work under the contract, made a survey or examination of the old structures, and prepared the preliminary estimates, sketches, drawings, and plans practically cov¿-ing in its entirety the proposed improvement. While continuing said work, and after having performed services of the value of $850, plaintiff was notified by letter from the secretary of the school board under date of June 12, 1929, that at an adjourned meeting of the board of education held on June 11, 1929, it was ascertained that the contract entered into with plaintiff was not in accordance with law and was void for the reason that a majority of the members of the board did not vote favorably on the proposition. The letter further stated: ''We find that we have in force a previous contract, and therefore are cancelling the contract with your firm that was signed without the necessary legal right. We regret the necessity of taking this action in the matter, and trust that it has caused you no great inconvenience.'' A representative of the plaintiff went to Marceline and saw the individual members of the board and endeavored to get them to meet, which they refused to do. Plaintiff proposed to continue the work which it was obligated to do under the contract, but was denied the privilege. The board employed another architect at the same rate of compensation and under whose supervision the building program was concluded.

A previous attempt to vote bonds had failed and, while not expressly called for in the contract, plaintiff was to aid in another campaign to procure the authorization of bonds in an amount found necessary and was to furnish advertising and other publicity matter

for use by the board, and had such matter prepared ready for use. A bond issue of $90,000 was duly voted and authorized within the time specified in the contract.

The petition sets forth all of the foregoing facts and alleges that in addition to the value of the service actually performed, plaintiff would have made a profit of something in excess of $2000 if defendant had permitted plaintiff to proceed under the contract and had not terminated it.

The answer admits the corporate existence of defendant as a town school district; denies each and every allegation of the petition; alleges that the purported contract sued on was at all times void; that defendant had no authority to enter into such contract for the reason that the board of education of said school district consisted of six members and that no contract with the plaintiff was ever at any time authorized by a majority of said board; that said contract was not made upon a consideration wholly to be performed or executed subsequent to the alleged making of said contract; and that no consideration for said contract was ever reduced to writing.

The reply denied all new matter contained in the answer, and detailed circumstances, acts, and conduct at the meeting of the board of directors said to constitute legal authority for the execution of the contract as made.

There is little controversy over the facts in the case and the only subject upon which there is conflict in the testimony is in reference to what occurred during the meeting of the school board at the time the contract is said to have been authorized and signed. The board consisted of six members and met on May 29, 1929, expressly for the purpose of engaging the services of plaintiff. The president of the board had requested a member of the plaintiff company to attend the meeting in person which he did. The representative of plaintiff brought with him a prepared contract, the same as that heretofore referred to, and already signed by the plaintiff, and presented it to the board for its consideration. There were five members of the board in attendance. The whole subject matter of the proposed improvement, as well as the contract, was discussed between the members of the board present and the representative of the plaintiff, and in the requested absence of said representative. The representative was then recalled and a discussion of the contract was resumed. Over the objection of defendant, plaintiff was permitted to introduce testimony as to what was said and done by the members of the board when a motion was made to accept the contract and to authorize its execution. The objection was on the ground that the testimony would be in conflict with the written minutes of the board. As we read the abstract the evidence was received not as a contradiction of the record

of the board, but to show the facts and the actual transactions at the time not shown by the minutes of the meeting.

Such evidence favorable to the plaintiff shows that upon the presentation of the contract to the board a motion was made by one member and seconded by another that the contract be let to plaintiff, and that the president and secretary execute the same on behalf of the school board. The motion was put to a *viva voce* vote and certain members responded in the affirmative. Dissenting votes were called for, but no member voted in the negative and no one showed dissent in any manner. The president of the board thereupon declared the motion carried. Immediately after the motion was adopted the contract and a duplicate were signed by the president and secretary of the school board and each party retained a copy.

The minutes of the meeting of the school board held on May 29, were offered in evidence by the defendant. They show the presence of five members of the board and the presence of the representative of plaintiff; that plans and drawings of various school buildings were exhibited with explanations as to details or arrangement and construction; that it was moved and seconded that Bonsack & Pearce be employed as architects on the proposed high school building at the customary fee of five per cent of the total cost. Then follows the part upon which defendant relies: ''Motion being put by the president, it was carried by a majority of members present, there being three affirmative votes, president and secretary not voting.''

Further evidence on behalf of defendant tended to show that when the motion was made there were only three affirmative votes. It is not claimed, and there is no evidence, that there were any negative votes, but there is evidence that the president and secretary did not vote, and that after the motion was put the president announced that it was carried ''by a majority of those present.'' The testimony of the secretary was: ''His announcement was that the vote was carried by a majority voting or number of members present, as I remember.'' The president first testified: ''I made the announcement that the motion had carried by the members present;'' and later when questioned again said: ''By a majority of the members present.'' Both the president and the secretary testified that they signed the contract ''in good faith.'' By action of the school board on June 11, the contract with plaintiff was repudiated and a ''supplemental agreement'' with another company of architects was adopted and executed.

The case was submitted to the jury upon the theory that if three members of the board, not including the president, voted in the affirmative and if no member dissented, and if the chairman thereupon

declared the motion carried, that his declaration, if made, became an affirmative vote on his part. The court gave an instruction for defendant to the effect that before the jury could find for plaintiff it must find that the contract received the assent of a majority of all the members elected to the board of education, and if it believed that at the time the contract is alleged to have been made there were six members of the board and that only three of said members assented to the said motion then the jury would find for defendant. The jury awarded a verdict to plaintiff in the sum of $1050, judgment followed, and defendant duly appealed.

The brief is presented in various subdivisions, but the underlying substance of practically all of the points is the insistence that the contract in suit was a complete nullity because it was not authorized by a majority of the whole membership of the board, and that only three of the six members voted for the contract. To sustain the appeal chief reliance is placed upon the minutes of the board, and upon the provisions of section 11240, Revised Statutes 1919, now section 9329, Revised Statutes 1929. Said section provides for the organization of school boards, the duties of the officers, and reads in part: "A majority of the board shall constitute a quorum for the transaction of business, but no contract shall be let, teacher employed, bill approved or warrant ordered unless a majority of the whole board shall vote therefor."

It is in effect contended by appellant that the recital in the minutes which recorded the action of the board is a finality on the subject as to how many members voted for or approved the motion to authorize the contract. The minutes recite: "Motion being put by the president, it was carried by a majority of members present, there being three affirmative votes, president and secretary not voting." This recitation is more in the nature of a legal conclusion than a statement of facts, especially the concluding part that the president and secretary did not vote. These minutes were evidently written after the execution of the contract because all the evidence shows that the contract was signed "immediately" after the motion was put and adopted. The legal effect of what was said and done at the time the motion was presented and adopted and the contract signed should not be determined exclusively by subsequent recitals of the secretary of the board in the minutes which do not contain all the facts nor state the whole truth. It was not for him to determine as a legal conclusion that the president did not vote or approve the adoption of the motion. It was more properly his function to faithfully record the affirmative and the negative vote according to the manner called for and show the members voting aye and the ones voting no, if any. It is conceded in this case that there was no vote by any member of the board against the proposition and none is so recorded in the

minutes or shown at any place in the record. The evidence for the plaintiff is that after the motion was put and the votes called for there were affirmative votes, no negative votes, and the president declared the motion carried. The jury was not compelled to believe the testimony of defendant's witnesses that the motion was declared to be carried only "by a majority of the members present." The evidence offered by plaintiff upon the subject was competent and properly received. Under the circumstances parol testimony was admissible to supply any omitted fact or action to supplement the written record of the school board in order that the action taken and things done might fully and truthfully appear. Minutes of the board constituted evidence of its acts, but not the sole evidence, and such records are not under all circumstances conclusive. [Peter v. Kaufmann, 327 Mo. 915, 923, 38 S. W. (2d) 1062 and cases cited.] Five of the six members of the school board were present and by their presence constituted a quorum, and it became and was the duty of each and every member to vote for or against any proposition which was presented to them. If, under such circumstances, a member does not respond when his vote is called for, but sits silently by when given an opportunity to vote, he is regarded as acquiescing in, rather than opposing, the measure and is regarded in law as voting with the majority. Such is the rule announced in many authorities. [Montgomery v. Claybrook, 213 Ky. 493, 281 S. W. 469; Ray v. Armstrong, 131 S. W. l. c. 1049, and cases cited; Springfield v. Haydon, 288 S. W. 337, 341; State ex rel. Young v. Yates (Mont.), 37 L. R. A. 205; Rushville Gas Co. v. Rushville, 121 Ind. 206, 23 N. E. 72; Jensen v. School District, 160 Minn. 233, 199 N. W. 911.]

The foregoing cases and many others to which they refer apply the principle that when a presiding officer of a school district, not previously voting, announces that a motion is carried he thereby casts his vote in the affirmative; and it being the duty of every member of a public body to vote, if any member remains silent and does not vote he is regarded as voting with the majority. The application of these legal rules to the case at bar supports the trial theory. The declarations of law were proper. Under the law and the evidence the jury could well find that the contract received the assent and approval of a majority of all the members of the school board. The assent of the president was not evidenced by mere passivity, but by active participation in declaring the motion carried and in signing the contract. That the contract expressed the true intent of the board at the time, we have no doubt.

The contract was not *ultra vires*. Its execution was in the power of the board; it was legally authorized and defendant had no right in law or morals to repudiate it and deprive plaintiff of the benefit thereunder. If necessary to prevent a manifest injustice the situa-

tion, shown by the facts and circumstances in this case, is sufficient to invoke the doctrine of equitable estoppel. [Edwards v. City of Kirkwood, 147 Mo. App. 599, 615; Simpson v. Stoddard County, 173 Mo. 421; Cole County v. Trust Co., 257 S. W. 774, 779.] Defendant received services of value from the plaintiff for a period of time and by its action deprived plaintiff of a substantial profit to which it was entitled and which it would have earned under the evidence but for the repudiation of the defendant. The amount of the verdict was only slightly in excess of the proved value of service actually rendered. It was for the right party and the judgment should be affirmed. The Commissioner so recommends. *Camp-bell, C.*, concurs.

PER CURIAM:—The foregoing opinion of BOYER, C., is adopted as the opinion of the court. The judgment is affirmed. All concur.