261 S.W.2d 385 (1953)
STATE ex rel. MARCUM
v.
SAPPINGTON et al.
No. 21739.
Kansas City Court of Appeals. Missouri.
April 6, 1953.
Rehearing Denied October 5, 1953.
*386 William E. Kemp, J. R. Clagett, James P. Tierney, Kansas City, L. W. Byars, Columbia, for appellants.
Terrell & Taylor, Frank Terrell, Guy A. Magruder, Jr., Kansas City, Ralph L. Alexander, Columbia, for respondent.
BROADDUS, Presiding Judge.
This is a proceeding in mandamus by relator, L. M. Marcum, against the mayor, members of the council, and the clerk of the City of Columbia. An alternative writ was issued by the circuit court and on final hearing was made peremptory. The city officials have appealed.
The purpose of relator's action was to compel appellants to amend the official minutes of a meeting of the city council held on January 21, 1946, so that the minutes as rewritten would recite that the city council had by a formal action accepted an oral proposal of the relator to furnish material and services to the city.
The City of Columbia, was in January of 1946, and for several years prior thereto, had been engaged in the expansion of its water and light plant. On January 31, 1946, a proposal from relator Marcum "to furnish all labor, material and equipment for the emergency piping" in the City of Columbia power plant, in accordance with plans and specifications prepared by the city's consulting engineers, Burns and McDonald Engineering Company, was accepted in the city's name in writing by its then mayor, Bruce J. Carl, attested by V. G. Caldwell, then city clerk, and approved by W. L. Nelson, Jr., then city attorney. After receiving this proposal so accepted, relator commenced to furnish materials and labor to the city, under the supervision of its superintendent, and continued to do so for approximately four years. At monthly intervals, in conformity with said contract, relator billed the city for his services and was paid monthly by checks signed by the mayor and city clerk. Such payments were made pursuant to monthly ordinances passed by the city council appropriating the money therefor from the proper city fund. The total sum paid relator was $548,534.16.
In March, 1949, the city adopted a charter form of government and a new administration was elected and took office the following May.
Thereafter, on October 13, 1950, the city filed a suit against relator Marcum in the Circuit Court of Saline County. The petition in that suit alleged that the contract was invalid because it was not approved in writing by the city council. Count I thereof alleged that the conduct of relator under said purported contract amounted to fraud and sought to recover the full amount paid to him. Count II alleged that the amounts paid to relator were exorbitant and sought to recover the difference between the amounts paid and the reasonable value of the work done by him.
Then on May 3, 1951, relator instituted the present mandamus proceeding against appellants in the Circuit Court of Boone County, to cause the minutes of the council meeting of January 21, 1946, to be rewritten so as to correctly state the authorization of the contract with relator at that meeting.
Since the sufficiency of the evidence to support the judgment is challenged it is necessary to briefly set out the testimony.
Relator's first and chief witness was A. C. Kirkwood, who in 1946 was the Burns and McDonald consulting engineer in charge of the work at the Columbia power plant. Since February, 1947, Kirkwood has not been associated with Burns & McDonald, but has been in business for himself. He testified that following a conversation with Elrow Crane, superintendent of the City Water and Light Department, relator was requested to come to Columbia and bid on certain piping work at the city's plant. The work was discussed with relator at the plant, and relator stated he would do the work on a cost-plus basis, on terms which he outlined and which were later embodied in the written contract. The matter of relator's offer was discussed with the city's Water and Light Committee shortly before the council meeting on January 21, 1946, and the committee decided that it should be presented by Kirkwood to *387 the full council. The proposal was then presented and explained by Kirkwood to the council at its meeting on January 21. Relator's proposal, as presented and explained by Kirkwood, was accepted by unanimous vote of the council and the mayor and clerk were authorized by the council to enter into a written contract including the terms as stated by Kirkwood. The written contract was thereafter prepared by relator and submitted to Kirkwood to be sure that it conformed to the proposal the council had accepted. Kirkwood checked the written document and found that it did conform to the proposal which he had submitted to the council and which it had accepted.
Bruce J. Carl, mayor of Columbia in January of 1946, had a definite recollection of the negotiations leading up to this contract, carried on between the consulting engineers (Burns & McDonald) through the Water and Light Committee; that Mr. Kirkwood made the recommendations on behalf of Burns & McDonald; that some of the councilmen objected "to the nature of the thing", but Kirkwood told them a "firm bid" could not be expected and there was no other way to get the work done; that as mayor it was his practice never to execute a contract on behalf of the city unless the council had authorized such execution; and that he was "quite positive" that the execution of this contract had been authorized by the council.
The authenticity of the signatures on the contract of Mayor Carl, Mr. Caldwell, the city clerk, and Mr. Nelson, the city attorney were conceded.
Velton G. Caldwell, city clerk of Columbia, in January of 1946 definitely remembered discussion of the Marcum contract in open council meeting and that Mr. Kirkwood led the discussion or made the report. To the best of the witness' recollection the contract was approved by the council although he doesn't recall any formal action the council took in connection with it. He had searched for the notebooks he used as clerk to make notes of the actions of the council, but the present city clerk could not find them. It was never his practice to attest a city contract that had not been approved by the council, and he is sure that he would not have signed this contract had it not been approved. The fact that the contract was signed was proof to him that it had been acted upon.
Walter Hulen, a member of the council in January of 1946, also remembered Kirkwood discussing the Marcum contract in a council meeting, and that relator commenced to do work in connection with the city's power plant very soon after this discussion. He did not remember any formal action having been taken, one way or the other, on the contract, but the Marcum contract was discussed at different times as the work proceeded.
Frank Tull, likewise a councilman in January of 1946, remembered the presentation by Kirkwood at a regular council meeting of a contract submitted by relator for piping. He remembered the contract because of its association with the term "force account", commonly known as "cost-plus". He could not recall the council authorizing the execution of the contract by the mayor, but did remember Kirkwood addressing the open council and the explanation that a cost-plus arrangement was the only medium for having the work done.
For appellants, J. P. Hamel, managing editor of the Columbia Daily Tribune in 1946, had with him a newspaper account of the council meeting of January 21, 1946, but an objection by relator to its introduction was sustained. Mr. Hamel stated after examining the newspaper files he could say that he had attended the evening council meeting on that date, and that to the best of his knowledge there had been no discussion of a proposed cost-plus contract with relator. Hamel said that he had had no independent recollection of what took place at the council meeting of January 21st, before he looked it up in the newspaper file, nor could he state who had written the newspaper article.
Charles A. Helm, J. W. Robinson and Claude E. Pauley, all members of the council *388 during 1946, could recall no discussion or action regarding relator's contract.
Will L. Nelson, Jr., city attorney of Columbia at the time had no recollection of being at the meeting of January 21st. He had signed the contract and approved it as to form but remembered no discussion or action by the council of relator's contract or any cost-plus contract.
Appellants first contend that the trial court erred in issuing its peremptory writ herein because relator failed to sustain the burden of proof by clear, cogent and convincing evidence. In support of their contention appellants cite seven cases, none of which contain facts in any way similar to those in the instant case.
A case which does deal with a situation like the instant one is that of State ex rel. William R. Compton Co. v. Walter, 324 Mo. 290, 23 S.W.2d 167, 171. It was a proceeding in mandamus against the secretary of the board of supervisors of a levee district to compel him to record in the record book of the district the minutes of a meeting of a said board alleged to have been held on a certain date. The essential question was whether or not certain resolutions pertaining to a bond issue had been adopted. On appeal from a judgment for the relator, the sufficiency of the evidence was challenged, and the court examined it carefully. Relator's only proof appeared to consist of: (1) testimony of a third party employed by the purchaser of the bonds in question that he had prepared and presented the resolutions involved and that the board had adopted them at the meeting in question: and (2) the fact that the secretary of the board, appellant in the case, had later certified the adoption of the resolutions at that meeting. Opposed to that was (1) testimony of one board member who "did not appear to have any definite idea as to what action the board took with reference to the bond issue * * * he saw the resolutions afterward and thought they were presented to him by Mr. Metcalf (the outsider), but * * * he did not remember any meeting of the board held thereafter at which the resolutions were passed"; (2) testimony of another board member that, while the prepared resolutions were brought to the meeting, he definitely did not make one of the resolutions in question; and (3) testimony of the secretary denying that the resolutions were passed. It is to be noted that each member of the board who testified negatived the passage of the resolutions. Yet relief was granted on the testimony of an interested third party, corroborated only by the certificate of the secretary (who on the stand denied adoption) and the fact that the resolutions admittedly were brought to the meeting. The opinion stated: "The whole evidence touching the question of the adoption of the resolutions presented an issue of fact for the trial court's determination", and the Supreme Court deferred to that determination.
Compare the proof in the case at bar: Kirkwood, a disinterested third party, testified in detail to the background facts, the presentation and approval of the contract with relator, refreshing his memory from his time cards, the only independent memorandum available at the trial. Four witnesses remembered the discussion of the proposal by Kirkwood, three of them specifically stating that this took place at a council meeting. While they could not remember the formal action taken by the council, within ten days after the meeting in question the mayor, clerk and city attorney signed the proposal in the city's behalf. As mayor, the practice of Mr. Carl was never to execute a contract on behalf of the city unless the council had authorized such execution, and he was "quite positive" that the execution of this contract had been authorized by it. The city clerk stated it was never his practice to attest a city contract that had not been approved by the council, and he was sure he would not have signed this contract had it not been approved. Promptly after the proposal was signed by the mayor, clerk and city attorney relator commenced to work for the city and bill it pursuant to the terms of the contract. Approximately a month after the contract was signed for the city, relator was paid $5,205.84, and large monthly payments continued for approximately four years thereafter. *389 Opposed to this is the testimony adduced by appellants, none of whose witnesses could specifically deny relator's proof, but who could only state that they did not remember the incident in question.
Also, the type of records sought to be corrected in the instant case has a natural bearing on the requirements of proof as the Missouri Courts have noted. Thus in State ex rel. Consolidated School Dist. No. 1 of Mississippi & New Madrid Counties v. Hackmann, 277 Mo. 56, 209 S.W. 92, 93, a mandamus proceeding, the court quotes with approval a statement of McQuillin referring to municipal records: "The courts are liberal respecting amendments of corporate records." The same opinion approvingly quotes the following language first used by the Supreme Court of Connecticut, Boston Turnpike Co. v. Town of Pomfret, 20 Conn. 590, likewise pertaining to records of municipalities:
"Courts, however, have never adopted, and from their nature it would not be practicable to adopt, those strict, technical and peculiar rules as to their correction, which apply to the amendment of judicial records. On the contrary, it is deemed of so great importance to uphold the proceedings of our municipal corporations that courts are disposed to be as indulgent in allowing entries of their proceedings to be amended, as is consistent with the safety of those whose interests would be affected by them."
The evidence herein, when viewed in the light of the holding of the Supreme Court in the Walter case, compels us to rule the point against appellants.
Appellants' second point is (1) that relator, in the action pending in Saline County against him by the city, could by parole evidence, establish the approval of his contract by the council, and (2) that therefore relator has a plain, adequate and complete remedy in the Saline County action, making it error for the trial court to have issued its writ.
As to the first, regarding the use of parol evidence, the Walter case stated:
"The rule is well settled that where the statute requires a municipal corporation to keep a record of its corporate acts, such acts, when called in question in a collateral proceeding, can be shown only by the records of the corporation; but where, as in this case, the secretary of the board failed to make a record of certain proceedings had by the board, and a direct proceeding is brought against him to compel him to make such a record, the best evidence rule is not violated by the introduction of parol evidence to prove what the board actually did, because in such circumstances parol evidence is not only the best evidence, but is the only evidence by which the action of the board could be shown."
In the Walter case, the Court refers to State ex rel. Barkwell v. Trimble, 309 Mo. 546, 274 S.W. 683, and City of Brunswick v. Scott, 219 Mo.App. 45, 275 S.W. 994, both cases involving the same facts. There plaintiffs sought to recover under a contract with the city, claiming that although the work had not been completed within the time limit fixed in the contract, the time had been extended by the city council by ordinance. Plaintiffs sought to establish passage of the extension ordinance by parol evidence. In summarizing these cases, the Court in the Walter case stated:
"The court held in these cases, and correctly so, that the passage of the extension ordinance could not be proved by parol testimony on the ground that the record of the city council showing the passage of the ordinance would be the best evidence. There is, however, no intimation in these cases that the plaintiffs therein could not have compelled the city clerk to make a record of the passage of the extension ordinance, if in fact it had been passed, then, in the suit to recover on the tax bills, use the record so made to prove the passage of said ordinance."
The procedure so outlined is, of course, what relator seeks to accomplish here, for the very reason, as stated in the Walter case, that he could not establish the council's authorization and approval of his contract *390 by parol testimony in the action in Saline County.
In attempting to show that it was not necessary for relator to follow such course, appellants cite two cases, Bonsack & Pearce, Inc., v. School Dist. of Marceline, 226 Mo.App. 1238, 49 S.W.2d 1085, and Peter v. Kaufmann, 327 Mo. 915, 38 S.W. 2d 1062. When analyzed, those cases do not support appellants' position.
It can well be asked: What adequate remedy would appellants offer to relator in the Saline County action? The city's suit there, as appellants state in their brief, is brought "on the ground that a purported contract (with relator) was not authorized by the City Council as required by Section 432.070, Mo.R.S.1949 [V.A.M.S.]." The statute cited requires that a valid contract of a city must, among other things, "be subscribed by the parties thereto, or their agents authorized by law and duly appointed and authorized in writing." The last three words of the statute supply the ground upon which the city has sued relator in Saline Countyto-wit: That because of the omission in the council minutes of any approval or authorization of relator's contract the agents of the city who signed it were not authorized in writing, and that the contract is therefore void. Without correcting the minutes to show the written authorization, there is no conceivable way that relator could establish the validity of his contract. As has been stated:
"Another remedy should be able to accomplish the same purpose as would mandamus if granted. * * * The other remedy, to supersede mandamus, must be competent to afford relief upon the very subject-matter of the application, and be equally convenient, beneficial and effective." Ferris, Extraordinary Legal Remedies, section 213, p. 247.
By instituting the instant direct proceeding relator pursued the course suggested by the Supreme Court in the Walter opinion. He had no other adequate and complete remedy.
Appellants' last complaint is that the trial court erred in sustaining relator's motion to strike paragraph 20 of their return. In that paragraph appellants asserted that the alleged contract was executed without advertising for bids and without competitive bidding; that at no time was there a valid existing contract as required by Section 432.070 of our statutes; that the amount of money received by relator was grossly excessive; that more than $334,800 thereof was not for work or labor supplied by relator, but was for work done, or materials furnished by various subcontractors, at large, and unconscionable profits to such subcontractors and to which relator added 20% for which he rendered little or no service.
It is apparent that the allegations in the paragraph in question had nothing to do with the matter before the court. At the hearing below appellants acknowledged that the only issue involved was what occurred at the council meeting on January 21, 1946. The transcript discloses the following:
Mr. Clagett (appellants' counsel) "Am I correct, Mr. Terrell, that the only issue involved here is what action was taken at the January 21st meeting of the City Council pertaining to an alleged proposal by Marcum to do certain work for the City? Mr. Terrell (relator's counsel) Right. Mr. Clagett: Very well."
Later in the trial counsel objected to the offer of stipulated evidence regarding the payments made by the city to relator, using this very pertinent language: "Mr. Clagett: They do not have any bearing on the issue. This is getting into the same field that we got into in paragraph 20 of our return. It is the only issue in the case, as stated by counsel last week when we argued the motion and he stated this morning that the only issue in this case is what took place on January 21st, 1946." (Emphasis ours.)
The plain fact is that the matters which appellants sought to inject into this proceeding deal with relator's performance of the contract with the city. In addition to *391 having no bearing on the matter before the court in the instant case, those questions can and no doubt will be raised in the action in Saline County between the two parties to the contract. The trial court was correct in striking allegations designed to compel a trial of the issues of the Saline County action as a prerequisite to reaching the relatively simple question of fact before it.
The judgment should be affirmed. It is so ordered. All concur.