**MISSISSIPPI–FOX RIVER DRAINAGE DISTRICT #2 OF CLARK COUNTY, Missouri, Plaintiff-Appellant and Cross-Respondent,**

v.

**Hugh PLENGE and Susan Plenge, Defendants-Respondents and Cross-Appellants.**

Nos. 51799, 51789.

Missouri Court of Appeals, Eastern District, Northern Division.

Aug. 4, 1987.

J. William Holliday, Kahoka, for plaintiff-appellant and cross-respondent.

Charles E. Rendlen, Hannibal, for defendants-respondents and cross-appellants.

SIMEONE, Senior Judge.

## I

These cases are consolidated appeals from a judgment entered on April 21, 1986, by the circuit court of Clark County which involved a dispute between the plaintiff, Mississippi-Fox River Drainage District # 2 of Clark County [drainage district], and the defendants, Hugh and his wife Susan Plenge, concerning the construction of the defendants' private levee and its connection with the district's levee.[1] The trial court denied Count I of the drainage district's petition for an injunction requesting an order that the Plenges "disconnect" their private levee from the district's main stem levee. The court did, however, grant the Plenges "affirmative relief" by permitting them to attach their private levee to the district's main stem levee, but imposed certain conditions. The order stated as follows:

(1) Plaintiff's claim as set forth in Count I of First Amended Petition is ruled against Plaintiff and in favor of Defendants. Count II and Count III has [sic] previously been dismissed.

(2) Defendants' request to attach their private levee to Plaintiff's levee shall be allowed upon the conditions and specifications that follow.

(3) Defendants shall immediately remove the berm located at the Southwest corner of their tract of land involved herein. This will be done on or before May 10, 1986 [condition (3)].

(4) Defendants will reconstruct their levee at the Northwest corner of their property to provide an arc of not less than 500 feet radius base. Defendants will complete this reconstruction within 60 days of the date of this Order. Thereafter, Plaintiff is ordered to remove the brush and debris pile located in the channel on the West of Defendants' levee [condition (4)].

(5) Defendants shall and are hereby ordered to maintain their levee with a minimum 10 feet top, at a height equal to or less than the District's levee immediately opposite (known as the Dyer levee). Defendants' levee shall "blend" into the points of attachment with the District's levee at the Northeast corner and Southwest corner so as to maintain uniformity in height insofar as possible. Defendants shall dress, shape, and seed their levee within a reasonable time [condition (5)].

We affirm in part and reverse in part. We affirm the judgment denying the district's petition for an injunction ordering the Plenges to disconnect their private levee and permanently enjoining them from reconnecting. We also affirm the judgment of the trial court upon the Plenges' request for "affirmative relief" insofar as the judgment orders the defendants to remove the berm and maintain their levee at a height equal to or less than the district's levee; but we reverse that part of the judgment which requires the defendants to reconstruct their levee at the northwest corner of their property to "provide an arc of not less than 500 feet radius base." Furthermore, we remand the cause for an evidentiary hearing so the court may determine the proper "shaping of" and "dressing up" of the northwest corner and enter an order in conformity therewith. We therefore affirm the judgment in all respects except for condition (4).

1. See appendix attached hereto for diagram of levees.

There is no need to unduly lengthen this opinion with a complete recital of the complicated maze of facts. Cutting through all the details, suffice it to say that the plaintiff is a drainage district organized and existing pursuant to chapter 242, RSMo. 1986 and all its pertinent provisions.

In 1975 the district acquired title to an easement and to the flood control levee existing upon said easement on lands adjacent to the land owned by defendant, Hugh Plenge. Hugh Plenge has been the owner of certain property within the district since 1981. Susan, his wife, has a marital interest in the property. In March, 1982, Mr. Plenge contacted various property owners and the board of supervisors of the district (presumably properly selected pursuant to § 242.150 RSMo.), concerning the building of a private levee on the side of Honey Creek opposite the drainage district's main stem levee. Plenge wanted the levee in order to protect the Plenges' property that runs along Honey Creek. The board held a special meeting on March 1, 1982, lasting for several hours at which the plans for constructing Hugh Plenge's private levee were discussed. The secretary, Mr. Lynn D. Fox kept the minutes. Those attending the meeting were Mr. Bruce Otte, "who might have been vice president—I wasn't president or secretary;" Mr. Fox, the secretary-treasurer; Harold Dyer, a neighboring landowner; Simon Jesberg, who owned and farmed land adjacent to the main stem levee and adjacent to the Plenge land; Jim Campbell, who farmed the property of Jesberg, and a few other "interested" persons. The topic of discussion was essentially what conditions Plenge must meet, with respect to the dimensions and location of his levee, in order for the drainage district to permit him to connect his levee to the main stem levee.

The dispute and the resulting lawsuit involved in this appeal center around what the parties agreed to. The original minutes that were taken at the meeting and, subsequently more formally recopied, state that (1) the "opinion was stated [that the levee was to be] 150′ from Simon's [Jesberg's] cemet [sic—cement] post for levee and the NW corner to be the same as Simon's corner, approximately 4 A's [acres]." Everyone "seemed to agree." The minutes, therefore, reflect that the board gave written consent authorizing Plenge to connect with the district's levee at a point 150 feet from the "cement post" and that the "northwest corner to be the same as Jesberg's corner" leaving a flood pool of approximately four acres. The minutes do not reflect any discussion or consent of the board concerning the berm or the height of the Plenge levee nor the requirement in the trial court's order that the northwest corner of the Plenge levee provide an "arc of not less than 500 feet radius base." The board members who testified claim that the minutes are not comprehensive and do not reflect what was agreed upon, and that the meeting was a long one and that other matters were discussed.

Considerable variance exists in the evidence as to what agreements were made between the board and Plenge for the connection of the private levee. There is even evidence that the "agreement" relative to the levee connection was actually between Simon Jesberg and Plenge and not with the board. The board takes one view of the "agreement" and Mr. Plenge another.

Clearly there was no written contract or "agreement" between the parties, and as the trial court stated in its judgment, neither party followed the provisions of § 242.370, RSMo. which requires written consent of the board of supervisors "particularly describ[ing] the method, terms and conditions of such connection, and shall be approved by the chief engineer." Under these circumstances the trial court, pursuant to the provisions of § 242.370.3, treated the Plenges "request for affirmative relief" as a petition, filed pursuant to § 242.370, and rendered the judgment imposing the conditions stated above.

Sometime after the March 1 meeting, Plenge contracted with a contractor to build his levee. The work commenced in 1982, but by the fall of 1982 he received no real protection. Plenge then hired a second contractor, Brad Ridgely, in September, 1982, who continued the construction

to the stage at which the levee stood at the time of trial in 1986. The levee is about 40–50 percent completed. The construction stopped because Mr. Plenge lacked the funds to pay for the completion. No work has been done since the fall of 1983. The levee remains uncompleted.

On appeal, the district contends that the trial court erred in not ordering the defendant to disconnect his levee because the levee was attached to the main stem levee without following the provisions of § 242.-370 and because there was insufficient substantial evidence to apply the defenses of laches and estoppel raised in the defendant's answer. At oral argument, however, counsel for the district stated that the plaintiff could "live" with the conditions the court imposed.

The thrust of the Plenges' appeal is that the trial court erred because conditions it imposed in its judgment and order—numbers (3), (4), and (5) are not supported by the evidence, either by the exhibits, testimony or the minutes, and because the trial court failed to apply the doctrines of laches and estoppel.

## II

Under the well-known principles set forth in *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976), we conclude that the judgment should be affirmed, except for condition (4).

A careful reading of the record convinces us, as it did the trial court, that there was an "agreement" that the Plenge levee should be 150 feet "back" from the Jesberg concrete post, that the northwest corner of the Plenge levee should have a flood pool of approximately four acres, "like Simon's corner," and that the height of the Plenge levee should be lower than the main stem levee.

■ As to the plaintiff district's appeal, the trial court did not err. The remedy of injunction is a harsh remedy and much lies within the discretion of the trial court acting as a chancellor. *Community Title Co. v. Roosevelt Fed. Sav.,* 670 S.W.2d 895, 900 (Mo.App.1984). While the

judgment entered against the district may appear to be inconsistent in that the court found that the statute was not meticulously followed, the statute does not demand absolute perfection. The provisions of the statute were attempted to be followed in good faith by the parties in their own informal method. While the procedure is not a model of fulfilling the technical provisions of the statute, the parties substantially fulfilled its provisions. We find no abuse of discretion.

As to the Plenges' appeal, although the parties have failed to follow the salutary provisions of chapter 242 and § 242.370 RSMo., we hold that there was substantial evidence for the trial court, under the law and the evidence, to reach the conclusions it did, except that it erred in one respect—requiring the defendants to reconstruct the levee at the northwest corner "to provide an arc of not less than 500 feet radius base."

## III

As to conditions (3) and (5) in the judgment and order—the removal of the berm and the height of the levee, the trial court did not err.

Mr. Fox testified that the conditions were "very definite" with respect to how far back the base of the Plenge levee had to be from the corner post, and he testified that the height of the levee was discussed at length. Mr. Otte also testified that at the March 1 meeting there was discussion concerning the height of the levee. As to the berm, expert witnesses for both the plaintiff and defendants recommended that the berm be removed. Even the defendants' witness, Mr. Harold Crane, a licensed engineer, recommended that the Plenge berm be removed.

■ There was substantial evidence for the court to conclude that Plenge was to construct his levee 150 feet back from Simon Jesberg's concrete post, that the height of the levee should be the same or lower than the main stem, and that the northwest corner of the Plenge levee should have a flood pool of approximately 4 acres, like "Simon's corner."

The court implicitly concluded that the Plenge levee was 150 feet "back" from Jesberg's cement post, and there was substantial testimony according to the plaintiff's expert wintess, Gerald Moughler, a licensed surveyor, that the Plenge levee was higher than the main stem. Harold Crane testified that the flood pool at the northwest corner of the Plenge levee contained 3.96 acres and the area of the Jesberg corner contained 4.11 acres. As to these conditions the judgment was proper.

■ As to condition (4), there was insufficient substantial evidence to support the court's condition that the northwest corner contain an arc of a 500 foot radius base. "Substantial evidence" is that "which has probative force upon the issues and from which the [trier] can reasonably decide the case on the fact issues." *Brown v. Meyer*, 580 S.W.2d 533, 534 (Mo.App.1979). The minutes do not reflect or require such a 500 foot radius arc. None of the witnesses present at the special March 1, 1982, meeting, and none of the board of supervisors, testified that such a requirement was part of any agreement. The concept of the arc originated as a recommendation in the report that Gerald Moughler submitted to the plaintiff's attorney in preparation for litigation and testified to at trial. Based upon the recommendation of Mr. Moughler, that the northwest corner contain a 500 foot radius arc, the court conditioned the construction of the Plenge levee to provide "an arc of not less than 500 feet radius base."

All of the evidence indicates that none of the parties ever agreed upon such an arc. The imposition of this condition was, therefore, erroneous.

■ The minutes reflect that the Plenge northwest corner should be the "same" as Jesberg's corner. There was substantial evidence that the northwest corner contained a flood pool of 3.96 acres and the Jesberg corner contained 4.11 acres, thus being in accordance with the discussions at the March 1 meeting and the minutes. There was evidence that the northwest corner needs "shaping" and "dressing up" and the court included that in its order. But there were no details given. Therefore, we

believe it proper for the trial court to have a hearing on this issue of the "shaping of" and "dressing up" of that corner so that the corner will be the "same as Simon's corner."

IV

As to all the conditions imposed by the trial court, the Plenges earnestly contend that the trial court erred in failing to apply the doctrines of "laches and equitable estoppel" because the defendant was placed at "an enormous disadvantage" when it failed to specify in the minutes the conditions it later asserted against the Plenges and because the district delayed filing its petition until after the levee had been "completed" by the defendant. The Plenges also contend that the "minutes" do not reflect the "conditions" imposed; hence testimony beyond the minutes was inadmissible.

■ While the general principle is that ordinarily the "minutes" of a meeting are the only admissible evidence of a board's action, *Halls Levee District of Buchanan County v. Hauber*, 461 S.W.2d 16, 17, 23 (Mo.App.1970), parol evidence is admissible to supplement the minutes to show "that a certain action was taken or thing done which the original record fails to show." *Peter v. Kaufmann*, 327 Mo. 915, 38 S.W.2d 1062, 1065 (1931); *Bonsack & Pearce v. School Dist. of Marceline*, 226 Mo.App. 1238, 49 S.W.2d 1085, 1087–88 (1932)—minutes not sole evidence.

This cause was first filed in April, 1985. The district was aware of Mr. Plenge's intent to build his levee in early 1982, and was aware that he was expending money. As early as the fall, 1982, Mr. Otte testified that he was aware of some "problems." The board did not visit the Plenge area until November, 1982. The members of the board visited the area because there were "problems," and because they assumed there was a blockage in Honey Creek. In April, 1983, Mr. Otte visited the area, riding a "three-wheeler" after a "big rain", to look for "blockage." Otte discovered that Plenge had constructed a "berm"

or "wing dam" on his levee, which looked like "it was holding back approximately a foot and a half [of water] or maybe even a little more." Otte subsequently talked with Plenge in 1983 and requested that he remove the berm. The board requested "several times" that Plenge remove the berm, but he did not. Both experts, including the defendants' witness, Mr. Crane, recommended removal of both the Dyer and Plenge berms. Since 1983 when Plenge discontinued work on his levee, things have been at a standstill. Suit was finally brought in 1985.

Whether the doctrines of laches or equitable estoppel should be applied under the circumstances involved here is a matter of sound discretion for the trial court. The trial court exercised that discretion and implicitly ruled that the doctrines, although pleaded, were not applicable as to the conditions it imposed in its judgment and order. This case involves a governmental entity. There is great reluctance among the authorities to apply the doctrine of estoppel against a governmental entity. 28 Am.Jur.2d *Estoppel and Waiver* § 34, at 638 (1966). In order for estoppel to apply in a given case, under Missouri law, there must be evidence of three elements: (1) an admission, statement, or act inconsistent with the claim afterwards asserted and sued upon, (2) action by the other party on the faith of such admission, statement or act, and (3) injury to such other party, resulting from allowing the first party to contradict or repudiate the admission, statement, or act. *Peerless Supply Co. v. Industrial Plum. & Heat. Co.*, 460 S.W.2d 651, 665–66 (Mo. 1970). Laches is akin to estoppel, and is sometimes spoken of as a species of estoppel. *See generally*, 28 Am.Jur.2d *Estoppel and Waiver, supra*, § 32, at 636; *State v. Reorganized District No. 11*, 307 S.W.2d 501, 509 (Mo. banc 1957). But more accurately, laches is an equitable doctrine that unreasonable delay bars a claim if the delay is prejudicial to the defendant. D. Dobbs, *Remedies* § 2.3, at 43 (1973). While these are the general standards, each case and its facts must be dealt with individually. We cannot conclude that the trial court abused its discretion in implicitly holding that these doctrines did not control the total situation. There are many gaps in the evidence as to exact prejudice or harm.

The Plenges rely principally on *Barkshire v. Drainage Dist. No. 1 Reformed*, 136 S.W.2d 701 (Mo.App.1940) to support the application of estoppel against the district. In *Barkshire*, the court applied estoppel to prevent a drainage district from connecting to a creek. The court relied on the combined factors of: (1) the belief of the district and property owners for 25 years prior to the court proceeding that they had not acquired the right to connect, due to a vague description of the district's purpose at the time of incorporation, and (2) when the plaintiff-property owner acquired his property he had no indication that such a right might exist. *Barkshire* is clearly distinguishable from the case at bar for many reasons, including the fact that the plaintiff there had no knowledge of the possible right of connection. In the case at bar defendants were aware that their permission to connect was conditional. The change of position after such a long period of time is significant. No such long period of time existed here.

Defendants also rely upon *State v. Springfield Water Co.*, 345 Mo. 6, 131 S.W.2d 525 (banc 1939). There the court applied the doctrine of estoppel because a city, by passing numerous ordinances and taking other positive actions, recognized a water company's franchise as perpetual, rather than terminating after 20 years. That case is distinguishable, because there the government took affirmative and frequent action. There was no affirmative action taken by the district here. The other decisions relied upon, *State v. Missouri Utilities Co.*, 331 Mo. 337, 53 S.W.2d 394 (banc 1932); *City of St. Joseph v. St. Joseph Terminal R. Co.*, 268 Mo. 47, 186 S.W. 1080 (1916), are not controlling as dispositive of the issues here.

The Plenges also raised as an issue that the trial court erred in not holding that the

Plenges had the right to protect their property, citing several cases. In ruling as we have, we do not need to address this as a separate issue.

In a case such as this, it would behoove the parties, and especially the board, to follow the provisions of Chapter 242 in the future; especially the clear provisions of § 242.370. As we have stated before "[w]e believe that this [law] is a salutary provision since [a connection] would be of concern to the district itself and ... would be of great concern to others who live in the drainage area ..." *Hirsch v. Steffen,* 488 S.W.2d 240, 244 (Mo.App.1972).

## V

To summarize, under all the circumstances, we believe that the cause should be affirmed in all respects except condition (4) and as to that condition the judgment should be reversed and the cause remanded for an evidentiary hearing to determine the proper "shaping of" and "dressing up" of the northwest corner of the Plenge levee, and after such hearing to enter an order in accordance therewith.

The judgment is affirmed in part and reversed in part.

DOWD, P.J., and CRIST, J., concur.